# Richmond

BELLE-HAVEN CITIZENS ASSOCIATION, INCORPORATED, ET AL. v.
HERBERT F. SCHUMANN, JR., ZONING ADMINISTRATOR, ETC., ET AL.

June 22, 1959.

Record No. 4941.

Present, Spratley, Buchanan, Miller, Whittle, Snead and l'Anson, JJ.

The opinion states the case.

*E. A. Prichard* (*Frederick A. Ballard; Livingston, McCandlish, Prichard & Ryan; Kilpatrick, Ballard & Beasley*, on brief), for the appellants.

*Robert C. Fitzgerald* and *William A. Moncure* (*Glenn U. Richard; Stanford E. Parris; Clarke, Richard, Moncure & Whitehead*, on briefs), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from a decree affirming the action of the Board of Zoning Appeals of Fairfax county which approved the action of the Zoning Administrator in issuing building permits to River Towers, Incorporated, to construct two 17-story apartment buildings on a tract of 26 acres, the undeveloped part of 110 acres for which a multiple housing permit had been issued in 1947 under the Fairfax Zoning Ordinance.

The case was heard on the pleadings, exhibits and stipulated facts. The court found that the action of the Zoning Administrator and of the Board of Zoning Appeals "was in all respects correct." The appellants are three corporations and four individuals who assert they are aggrieved by this decree. The appellees are the Zoning Administrator, the Board of Zoning Appeals, the Board of County Supervisors, the corporate owners of the 26 acres and their vendee, River Towers, Inc.

Section 6-12 of the Zoning Ordinance of Fairfax county in effect in 1947 (Code of Fairfax County, Vol. II) established a Board of Zoning Appeals. See Code of Virginia, § 15-850. Section 6-12 (f) thereof empowered this Board "to grant special exceptions and au-

thorize the zoning administrator to issue use permits for the erection of multiple housing projects in the Urban Residence District," in which this 110-acre tract was located, the application therefor to be first submitted to the county planning commission for its recommendations, and if granted the layout to be approved by the planning commission "as being in conformance with the regulations as set forth in section 6-14 of this volume, and a subdivision plat * * shall be approved and recorded before any construction permits shall be issued." [1]

Section 6-14 provided that the Board of Zoning Appeals may permit the erection of multiple housing projects "subject to the regulations set forth in this section," as provided in § 6-12 (f) 5. It then defined a multiple housing project and in subsection (b) provided against limiting the height of the structures.

On February 25, 1947, the owners of the 110-acre tract applied to the Board of Zoning Appeals for permission to erect a multiple housing development on this tract. The Chairman of the Board asked for the report of the Planning Commission, which thereupon recommended that the application be granted "subject to the construction of the project in conformance with the type of architectural design indicated by the perspective rendering submitted with the application."

A member of the Board thereupon moved that the application be granted "providing the builders conformed to the recommendation of the Planning Commission," and the motion unanimously carried.

Pursuant to the permission so granted and under building permits severally issued, the first on June 18, 1947, two in 1949 and one in 1950, four sections of apartment buildings were constructed from 1949 to May 9, 1951, containing 972 apartment units on 70.5 acres of the tract. In May, 1947, 13.5 acres of the 110-acre tract were zoned for general business purposes, and an office building and 20 stores were constructed thereon from 1951 to 1955 under building permits issued in 1950, 1953 and 1954.

On or before May 22, 1957, the Board of Supervisors directed the Building Inspector to hold up the issuance of the permits applied for by River Towers, Inc., to construct the two 17-story apartment

---

[1] By an amendment of August 1, 1956, § 6-12 (f) 5 was deleted from the Zoning Ordinance and § 6-14 was amended to put the authority to issue permits for the erection of multiple housing projects and multiple dwellings in the urban residence district in the hands of the Board of Supervisors.

buildings, but on June 5, 1957, the Board rescinded that order and the permits were then duly issued. On appeal to the Board of Zoning Appeals and after extended hearings on July 9 and July 23, 1957, the permits were approved by a 3 to 2 vote of the Board members. The appeal to the circuit court resulted in the decree confirming these actions as noted above.

Under their assignments of error the appellants contend, first, that under the terms of § 6-12 (d) 2 of the Zoning Ordinance the right of River Towers, Inc., to erect the two 17-story apartment buildings had expired because the building permits therefor were not issued within six months after February 25, 1947, the date on which the right to erect the multiple housing development on the 110 acres was granted by the Board of Zoning Appeals. Section 6-12 (d) 2 under the heading *"General powers and duties"* reads as follows:

"No order of the board approving the erection, alteration or use of a building shall be valid for a period longer than six months, unless:

a. A building permit for such erection or alteration is obtained within such period and such erection or alteration is started and proceeds to completion in accordance with such permit, or

b. Such use is established within such period; provided, however, that where the use permitted is dependent upon the erection or alteration of a building, such order shall continue in force if a building permit for such erection or alteration is obtained and such erection or alteration is started and proceeds to completion as provided above."

The contention of the appellants reflects a mistaken view of the meaning of this section. The words "order of the board" in the section relate in this instance to the order entered by the board under § 6-12 (f) 5, granting to the predecessors of River Towers the special exception giving it the right to erect its multiple housing project on the 110 acres, and authorizing the Zoning Administrator to issue use permits therefor. This order of the Board established a use which the owners could then make of their land. It was not the duty of the Board of Zoning Appeals to issue building permits for the buildings to be erected in the exercise of that use. Section 6-13 of the Zoning Ordinance provided that building permits be issued by such officer as may be designated by the Board of Supervisors after the application for the permit has been approved by the Zoning Administrator.

Section 6-12 (d) 2, so far as the situation here involved is concerned, requires that a person who has been granted a special exception use involving the erection of buildings shall get a building permit and start building operations within six months from the date of the grant and proceed to completion of that building. It does not require that building permits for all buildings that may at any time be erected on the premises shall be obtained and construction started within six months. The requirement is that "a building permit" be obtained and construction started within the stated time, which concededly was done in this case. Zoning laws should be given a fair and reasonable construction, as said in *Mooreland* v. *Young*, 197 Va. 771, 775, 91 S. E. 2d 438, 441. It is not to be supposed that the purpose of this section was to place such a time limit on the exercise of the use granted as would in effect nullify the grant in projects involving a number of buildings. *Cf. Hopkins* v. *O'Meara*, 197 Va. 202, 89 S. E. 2d 1.

That such a meaning was not intended is indicated by the fact that permits were issued for apartment buildings on these premises on at least three occasions since the six months' period expired, and by the further fact that the Zoning Ordinance was amended in 1957 to provide a limitation of five years after the use was granted on the issuance of building permits for the erection of multiple dwellings (not multiple housing projects), not to apply however to any building or foundation permit issued prior to the amendment. The views of the meaning and application of § 6-12 (d) 2 so indicated by both the legislative and administrative departments of the county (and which are expressed again in their brief on this appeal) are material in determining the purpose and intent of that section. *Vinton-Roanoke Water Co.* v. *Roanoke*, 110 Va. 661, 665, 66 S. E. 835, 836. We hold that § 6-12 (d) 2 is no bar to the issuance in 1957 of the building permits for the erection of the proposed apartment buildings.

Appellants contend next that the issuance of the permits to erect the two 17-story apartment buildings violated the conditions on which the special exception was granted by the Board of Zoning Appeals in 1947. In support of this contention they point out that the application for the special exception was granted "providing the builders conformed to the recommendation of the Planning Commission," which was that the exception be granted "subject to the construction of the project in conformance with the type of archi-

tectural design indicated by the perspective rendering submitted with the application."

What "the perspective rendering" indicated as to the "type of architectural design" is not shown. It was not produced and is said to have been lost. Appellants argue, however, that what was built by the owners under the permission so granted establishes "the type of architectural design" referred to. They exhibited photographs of the apartments that had been constructed which they say are of "colonial" or "garden" type. There is no testimony in the record which defines the architectural type of the present apartments, or which shows that the proposed buildings are of a type of architectural design different from buildings now on the ground, other than a substantial difference in height between those existing and the ones proposed. The proposed structures are to be 17 stories high, while the existing structures are two or three stories high. This difference in height is the real cause of the appellants' objection and the point of their complaint. In this, however, their objection runs against a clear provision of the Zoning Ordinance itself.

Section 6-14 of the Zoning Ordinance deals with multiple housing and provides in detail with respect to multiple housing projects and the granting of permission (now by the Board of Supervisors) for the erection of such projects. Subsection (b) thereof is on the subject of "*Height regulations*" and specifically provides:

"The height of any structure shall not be limited; provided, that no part of any structure shall be located closer to any property line than a distance equal to one-half the height of that part of the structure from the finished grade along the property line."

This clear provision of the Zoning Ordinance was of course binding on the Board of Zoning Appeals when it granted the special exception for the multiple housing project on the 110-acre tract. Neither that Board nor the Planning Commission could legally affix a condition to the granting of the special exception which would violate this provision of the ordinance. 2 Metzenbaum on Zoning, p. 957. Section 6-12 (f) 5 in terms provides that the layout of the project shall be "approved by the planning commission as being in conformance with the regulations as set forth in section 6-14 * *."

A board of zoning appeals has no power to legislate nor to repeal or amend the provisions of a zoning ordinance or statute. 8 McQuillin, Municipal Corporations, 3 ed., § 25.238 at p. 581. Section 6-12 (d) 5 of the Fairfax Zoning Ordinance specifically provides that "The

board [of zoning appeals] shall not have the power to amend any provision of this chapter or the Zoning Map."

The appellants argue and the record indicates that the Planning Commission and the Board of Zoning Appeals did not contemplate the erection of 17-story apartment buildings when the special exception to permit the erection of the multiple housing project was granted in 1947. There cannot, however, now be read into the special exception then granted a condition limiting the height of the structures to be erected contrary to the express terms of the ordinance.

The third and final assignment is that the court erred in holding that Belle-Haven Citizens Association, Incorporated, and Bucknell Manor Citizens Association, Incorporated, were not proper parties to the cause and dismissing them as parties complainant. This, as the decree states, was on the ground that these two corporations did not own any real estate and were not aggrieved by the decision of the Board of Zoning Appeals within the meaning of § 15-850 of the Code. Exception was taken to this ruling only by these two corporations and since they were dismissed by the decree which decided the case against their contention on its merits, no prejudice resulted to them from this ruling.[2]

The decree appealed from is affirmed.

*Affirmed.*

---

[2] Discussions of the question of who is an aggrieved party may be found in 101 C.J.S., Zoning, § 321 at p. 1108; 58 Am. Jur., Zoning, § 253, p. 1073; Annotations, 168 A.L.R. 133, 46 A.L.R. 2d 1059.