611 F.2d 1367
 UNITED STATES of America, Appellant,
v.
The BOARD OF SUPERVISORS OF ARLINGTON COUNTY; Arland Towers
Co.; TwinDevelopment Corporation; Theodore B.
Gould, Appellees.
UNITED STATES of America, Appellee,
v.
TWIN DEVELOPMENT CORPORATION, Appellant,
and
The Board of Supervisors of Arlington County; Arland Towers
Company; TheodoreB. Gould, Defendants.
UNITED STATES of America, Appellee,
v.
ARLAND TOWERS COMPANY, Appellant,
and
The Board of Supervisors of Arlington County; Twin
Development Corporation; Theodore B. Gould, Defendants.
UNITED STATES of America, Appellee,
v.
The BOARD OF SUPERVISORS OF ARLINGTON COUNTY, Appellant,
and
Arland Towers Company; Twin Development Corporation;
Theodore B. Gould, Defendants.
 Nos. 79-1288 to 79-1290 and 79-1292.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 4, 1979.
Decided Dec. 20, 1979.
 
 Maryann Walsh, Dept. of Justice, Washington, D. C. (Richard G. Robbins, Asst. Sol., Anatolij Kushnir, Dept. of Interior, Terrence M. O'Connor, Asst. Gen. Counsel, National Capital Planning Commission, James W. Moorman, Asst. Atty. Gen., Carl Strass and Andrew F. Walch, Dept. of Justice, Washington, D. C., on brief), for appellant/appellee.
 Jerry K. Emrich, Arlington County Atty., Arlington, Va., Francis A. McDermott, Fairfax, Va. (John J. Sabourin, Jr., Hazel, Beckhorn & Hanes, Fairfax, Va., on brief), and Robert T. Lasky, Mark C. Ellenberg, Washington, D. C. (Cadwalader, Wickersham & Taft, Washington, D. C., on brief), for appellees/cross appellants.
 Before WINTER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is an action by the United States in its proprietary capacity to enjoin further progress in the construction of certain business structures in Arlington County, Virginia. As originally framed, the complaint asserted a right to such injunctive relief because the buildings, which are in process of construction, (1) violated the height and density limitations for buildings as classified in the applicable zoning ordinance of the County and (2) created a public nuisance by their interference with the skyline of the Potomac Basin. The United States has, on this appeal, abandoned the second ground on which it sought relief and has confined its right to relief to the claim that the County Board of Supervisors of Arlington County exceeded its powers under the County zoning ordinance in approving the site plans and in issuing use permits for the construction of the buildings. It claims standing in its proprietary capacity to assert this claim because it owns land in the County and, like any other landowner in the County, may object to a violation by the County authorities of their local zoning ordinances.
 
 
 2
 The defendants, who are the County Board of Supervisors and the two corporate ventures engaged in the construction of the projects, deny any violation of the County zoning ordinances either by the Board of County Supervisors in approving the projects or by the builders in proceeding, under that approval, with construction under the use permits issued on the basis of that approval. They also contend, by way of an affirmative defense, that the United States, when it sues in its proprietary as distinguished from its sovereign capacity, is subject to the ordinary rules of equitable estoppel and laches and that, both as a matter of general equity and of Virginia statutory law, it is estopped to enjoin further progress in the construction.
 
 
 3
 The district court found no occasion to decide the defendants' estoppel or laches claim since it concluded that the approval of the site plans and the issuance of the use permits by the County Supervisors complied with the terms of the County zoning ordinance. It is from this ruling that the United States has appealed, contending that the order of the district court erred in "sustaining the site plan approvals for Arland Towers and Twin-Gould as consistent with and authorized by the Arlington County zoning ordinance." Since we agree with the district court's construction of the ordinance, we affirm without reaching the defendants' affirmative claim.
 
 
 4
 What this appeal poses for decision is a simple construction of a County zoning ordinance. The authority of the Board of Supervisors of the County under State law to enact a zoning ordinance, with fixed classifications, is clearly stated in the appropriate state statutory law.[1] This authority may encompass the power to regulate the height and size, among other things, of any building which may be erected within any authorized classification.[2] The state statutes, however, permit the Board of Supervisors, acting in a legislative capacity,[3] to reserve unto itself "the right to issue . . . special exception(s) or use permit(s)" which will alter, modify, or increase any height provisions for buildings qualifying under any classification.[4]
 
 
 5
 Section 25 of the zoning ordinance placed a height limitation of twelve (12) stories or 153 feet for office buildings, and sixteen (16) stories or 180 feet for apartments and motel buildings, erected within a C-O classification. It also required the site plans for any building qualifying under the Section to be submitted and "approved as provided in Section 36, Subsection H." Under subsection H. 5, however, the County Board reserved to itself the power "to modify the uses permitted" under Section 25 under certain circumstances of which the pertinent ones are:
 
 
 6
 a. In considering such modification, the County Board may take into consideration (1) Provisions made for open space and other environmental amenities; (2) Grade, direction and intensity of traffic on adjacent streets; (3) Relationship to adjacent existing or permitted uses and buildings; (4) Particular dimensions, grade and orientation of the site, (5) Particular construction problems and techniques; and (6) the other provisions of Section 36, Subsection H.
 
 
 7
 b. In considering the approval of a site plan including apartments, the County Board may permit additional height, not to exceed six (6) stories, providing the Board judges that a variety of housing units and design would result thereby. Consideration of such design may include, but not be limited to, the provision of family housing units, housing for the elderly and such variety of design as provided by townhouse or terraced construction in association with the high-rise development.
 
 
 8
 c. In considering the approval of a site plan including apartments, the County Board may permit additional height, one (1) or more stories up to a maximum of six (6) stories, and/or additional apartment density not to exceed ten (10) percent providing that the Board judges (1) that ten (10) percent of the total residential units which would otherwise be allowed on the site qualify as moderate income housing units, and (2) that adequate guarantees exist as to the continued availability of such units to families of moderate income. New moderate income housing units may be constructed either on-site or at appropriate off-site locations approved by the County Board or may be provided by means of in lieu tax relief/rent supplement payments at levels approved by the County Board. (A. & E. 4-14-73)
 
 
 9
 d. In considering the approval of an office, motel or apartment site plan, the County Board may permit additional height, not to exceed three (3) stories, and/or additional density, not to exceed 0.25 F.A.R. in an office structure, or ten (10) percent in a motel or apartment structure, providing the Board judges that a contribution to required community facilities has been provided. Consideration of such facilities may include, but not be limited to, the provision of space for a library, fire station, public school facility, public transit facility, or a community recreation or health center. Such community facilities may be provided at appropriate off-site locations.
 
 
 10
 e. Under no circumstances shall any combination of the incentives provided in subparagraphs b. through d. above be interpreted to allow additional height in excess of a maximum of six (6) stories, or additional residential density in excess of ten (10) percent.
 
 
 11
 The buildings which the defendant-builders proposed to construct were in the C-O classification as fixed by Section 25 of the ordinance. However, they exceeded the height limits as generally declared in that section for buildings qualifying under the C-O classification. The builders recognized this and, in filing their site plans as required by Section 25, they requested the approval of their proposed construction and the issuance of use permits allowing the construction of the structures described with the heights therein shown pursuant to Section 36 H. 5. The Board, acting in its legislative capacity, approved the site plans as filed and issued the requested use permits under the authority reserved to it under Section 36 H. 5.
 
 
 12
 It is the position of the Government that, conceding that the County Board under Section 36 H. 5, had a clear right, in its legislative capacity, to modify the height limitations fixed in Section 25 for buildings qualifying under that section, such power of the Board to modify was strictly limited by subparagraph d. of Section 36 H. 5. Under its construction of subparagraph d., the power of the Board to grant use permits allowing increases beyond the precise height limits fixed by Section 25 for any C-O classified building was strictly limited to no more than three (3) stories above the limits fixed in Section 25, I. e., twelve (12) stories for office buildings and sixteen (16) stories for apartments and motel buildings. Admittedly the structures covered by the use permits in this case would exceed those limits, if subparagraph d. is a proper limitation upon the Board's power. It is the contention of the defendants, however, that the grants of the use permits were validly made under the authority of and in full compliance with the provisions of subparagraph a. of Section 36 H. 5, which subparagraph they urge is entirely separate from and independent of subparagraph d. It follows from the statement of the conflicting positions of the parties that the single issue is whether subparagraph a. of Section 36 H. 5 is a grant of authority to the Board which is not limited by subparagraph d. of 36 H. 5.
 
 
 13
 We agree with the district court's basic conclusion that subparagraph d. does not limit the Board's power of modification under subparagraph a. of Section 36 H. 5. We do so on the basis of the legislative history of the two subparagraphs, the language itself of the several subparagraphs of subsection 5, the obvious contradictions in the subsection that would follow from the adoption of the Government's argument, and the consistent construction of the subsection by the Board of Supervisors over a period of many years.
 
 
 14
 We turn first to the legislative history of the two subparagraphs. Subparagraph a., in one form or another, has been a part of the zoning code since 1962. It granted a general authority applicable to any type of construction meeting the specific criteria set forth in it. It covered a structure which met the specifications fixed in Section 25, and it was often applied without question in granting exceptions to the height limitations established in Section 25. On the other hand, subparagraph d. was adopted by the Board of Supervisors in 1972 as a part of an ordinance which embraced subparagraphs b. through e. of subsection 5. That ordinance, of which subparagraph d. is a part, was introduced, to quote the language of the official minutes, in order "to provide incentives for moderate income housing units and other amenities." This legislative purpose was restated in the preamble of the ordinance itself:To provide incentives to developers who provide moderate income housing units, a variety of housing units, contributions to open area, recreational space, other environmental amenities, and required community facilities . . . .
 
 
 15
 And the language of the several sections of this 1972 addition (subparagraphs b. through d. of subsection 5) seeks to carry out this purpose. Thus, what was codified as subparagraph b. authorized height variations up to six stories for apartments providing "family housing units" and "housing" for the elderly. Subparagraph c. allows for a height variation of six stories for apartments, a substantial percentage of which was to be guaranteed as continuously available for "families of moderate income." Subparagraph d. gives a bonus of three additional stories for an office, motel, or apartment structure, provided "the Board judges that a contribution to required community facilities (later defined to include 'space for a library, fire station, public school facility, public transit facility, or a community recreation or health center') has been provided" by the builder. It appears fairly obvious from this legislative history that subparagraphs b. through d. of subsection 5 had a purpose, separate and distinct from that of old subparagraph a., a purpose to provide "incentives" in promoting the construction of a very Particular, rather than a General, type of construction. These subparagraphs accordingly established new and different criteria to be employed in applying these new subparagraphs. And, to show that these subparagraphs were intended as a special provision, applicable only to the type of construction intended to be encouraged, rather than as a limitation upon or related to subparagraph a., the ordinance in subparagraph e., the over-all limiting subparagraph, very specially restricted such limitation to the powers granted the Board by subparagraphs b. through d., thereby showing an intention to treat subparagraphs b. through e. as something quite separate from a.
 
 
 16
 A consideration of the language of the several subparagraphs suggests even more forcefully than does this historical background of the subparagraphs of the subsection the separateness of subparagraph a. from the other subparagraphs of the subsection and Even, subject to the limitation of subparagraph e., the separateness of subparagraphs b., c., and d. themselves. Thus, there is but one subparagraph (I. e., subparagraph e.) which limits specifically any other subparagraph, and this subparagraph with its limiting provision appears by express language to apply only to subparagraphs b. through d. and significantly was not to apply to subparagraph a. And this limiting subparagraph was added because without it the authority to modify height restrictions and to permit the additions of stories allowed in the several subparagraphs of b. through d. could be combined, and the Board did not wish to permit this, so far as moderate income housing Only was concerned. Plainly, if the Board had intended to limit its power under a., it would also have included a. within the limiting language of e. The significant absence of subparagraph a. from the limiting language of subparagraph e. is strong evidence that the new ordinance of 1972 was not to act as a limitation on the powers of the Board under subparagraph a.
 
 
 17
 There is, however, a stronger reason for finding that subparagraph d. was not intended as a broad prohibition on any use permit issued under subparagraph a. and allowing a variation of more than three stories beyond the height limits fixed by Section 25. To accept the Government's argument that subparagraph d. limited the power by the Board to provide for height modifications under subparagraph a. would amount to holding that d. limited the power of the Board to grant height modifications under subparagraphs b. and c. also. This is so because, under the Government's argument, subparagraph d., with its limitation of three stores applies to any "office, motel or apartment site plan." Both subparagraphs b. and c. refer to site plans for buildings falling within such description and would, by the logic of the Government's argument, be as completely covered by the limitation of three-stories as would subparagraph a. Yet, such a construction would manifestly contradict both subparagraphs b. and c., since it would, by its three story limitation, completely nullify the authority in the Board to grant increases of six stories for buildings qualifying under subparagraphs b. and c. The Board manifestly never intended such a contradiction in the subparagraphs of the subsection; it clearly intended, on the contrary, that each subparagraph in the subsection was to be treated as providing the Board with a separate, distinct, and independent power, except as subparagraphs b., a., and d. were restricted by subparagraph e.
 
 
 18
 Finally, we look to the consistent construction placed on the various subparagraphs of subsection 5, since when an administrative agency, acting in a legislative capacity, proceeds to apply its own administrative rules or ordinances, thereby giving to them its construction of their application, that construction is to be given great weight.[5] The Board offered in evidence a uniform application of the subsection by the Board for many years. This record established that the Board had always construed subparagraph a. as entirely separate from subparagraphs b. through e., and, specifically, that subparagraph d. was unrelated to, and not a limitation upon the authority of the Board under subparagraph a. Such a long continuous construction of the ordinance is a strong support for the district court's conclusion.[6]
 
 
 19
 After considering all the above factors, we are convinced that the district court was correct in finding that subparagraph d. of Section 36 H. 5 did not limit or restrict in any way the power of the Board of Supervisors under subparagraph a. It is true subparagraph a. requires the Board, upon granting a modification under that subparagraph, to consider certain specified factors. The record, however, demonstrates that the Board did give reasonable consideration to all these factors in reaching the decision which the Government assails. Under those circumstances, it cannot be said the Board, in its action approving these site plans and granting the use permits, acted unreasonably or arbitrarily in that its action was not in strict accord with its valid power under the zoning ordinance.
 
 
 20
 Since we have found that the action of the Board of Supervisors was valid, we, like the district court, find it unnecessary to decide the claim of equitable estoppel asserted by the defendants. See, however, United States v. Lazy FC Ranch, (9th Cir. 1973) 481 F.2d 985, 27 A.L.R.Fed. 694; United States v. Georgia-Pacific Company, (9th Cir. 1970) 421 F.2d 92, and Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551 (1979).
 
 
 21
 The judgment of the district court is accordingly
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Virginia Code, § 15.1-486 (1978)
 
 
 [2]
 Virginia Code, § 15.1-486(b) (1978)
 
 
 [3]
 Byrum v. Board of Sup'rs, (1976) 217 Va. 37, 225 S.E.2d 369, 372-73
 
 
 [4]
 Virginia Code, § 15.1-491(c) (1978)
 
 
 [5]
 Belle-Haven Citizens Association, Inc. v. Schumann, (1959) 201 Va. 36, 109 S.E.2d 139, 142
 
 
 [6]
 Bollinger v. Bd. of Sup'rs of Roanoke County, (1976) 217 Va. 185, 227 S.E.2d 682, 684