## CIRCUIT COURT OF AUGUSTA COUNTY

Thomas H. Tullidge, Sr.

v.

Zoning Appeals Board
of Augusta County

December 16, 1992

By Judge Duncan M. Byrd, Jr.

On October 20, 1992, the Court heard evidence and arguments upon the issues raised in the case of Thomas H. Tullidge, Sr., against the Board of Zoning Appeals of Augusta County ("BZA"). Following the hearing, the Court granted BZA leave to file a Reply Memorandum to Tullidge's Trial Memorandum within thirty days. Tullidge was also granted leave to file a Rebuttal Memorandum within fifteen days following BZA's Memorandum. The Court is now in receipt of the respective Memoranda and has considered them along with the totality of the evidence and arguments of counsel.

### Facts

Tullidge filed an application with Augusta County for a special use permit dated August 8, 1991. The application sought a special use permit "for the purpose of hunting animals and birds, both wild and pen-raised . . . ."[1] On August 30, 1991, Tullidge withdrew all his applications for a special use permit.

Tullidge filed an application, dated November 19, 1991, for establishing a licensed hunting preserve with the State Department of

---

[1] The application also sought a special use permit for "a kennel for dogs . . . . [A] retail establishment . . . for the purpose of having for sale hunting supplies for guests . . . . [A] sporting clays course . . . . [A] 100-yard rifle range . . . ." These uses are not at issue in this action.

Games and Inland Fisheries ("State Game Board"). The State Game Board approved the application December 23, 1991.

On January 29, 1992, the Augusta County Attorney, Edward A. Plunkett, wrote to Tullidge on behalf of the Augusta County Zoning Administrator informing Tullidge that a special use permit is required under the county zoning laws. On February 27, 1992, Tullidge appealed the County Zoning Administrator's decision to the BZA. The grounds for the appeal were: one, Virginia State law, granting power over hunting preserves to the State Game Board, preempts all local regulation of shooting preserves and other hunting activity; and, two, if the County is not preempted, then the Augusta County Zoning Ordinance does not require a special use permit for the property in question.[2]

A public hearing regarding the issuance of a special use permit was held before the BZA April 7, 1992. Counsel for Tullidge and counsel for concerned citizens neighboring the property in question appeared at the hearing.

On May 5, 1992, the BZA ruled that the issue of preemption was not for them to decide and that the operation of a shooting preserve on the property in question required a special use permit. The finding that special use permit was needed was based upon three factors. The three factors are: that hunting takes place; the game hunted is stock or pen-raised on the premises as opposed to being found in its natural state; and, that hunters pay a fee to hunt. Record, p. 509.

Tullidge appealed the BZA's findings to the Circuit Court. The issues are the same as those before the BZA: one, does Virginia state law granting power over hunting preserves to the State Game Board and the granting of a license by the State Game Board preempt all local regulation of shooting preserves and other hunting activity; and, two, if the County is not preempted, then does the Augusta County Zoning Ordinance allow the BZA to require a special use permit for a shooting preserve?

*Analysis*

A. *Preemption*

Tullidge claims the granting of power over hunting preserves to the State Game Board and the license granted by the State Game Board for his property preempts any action taken by the BZA regard-

---

[2] There was a third issue raised which is not being reviewed here.

ing a hunting preserve on his property. Examination of whether a local ordinance is preempted by state law must begin with the "Dillon Rule." The Dillon Rule is a rule of limited local authority. Local governments, such as Augusta County, are created by the Virginia General Assembly and enjoy those powers expressly granted by the General Assembly or those arising by necessary implication. *Cupp v. Board of Supervisors*, 227 Va. 580, 594, 318 S.E.2d 407 (1984); *Hylton Enterprises, Inc. v. Prince William Co.*, 220 Va. 435, 440, 258 S.E.2d 577, 581 (1979). Any fair, reasonable doubt concerning the existence of the local government's power results in the power being denied. *Stallings v. Wall*, 235 Va. 313, 316, 367 S.E.2d 496, 498 (1988). Cases involving the Dillon Rule often hinge upon whether the local government's power to act as it did is implied in a state grant of power. *Stallings*, 235 Va. 313, 367 S.E.2d at 498.

The General Assembly granted Augusta County the authority to classify its territory into zoning districts. This authority is granted to the county for "the general purpose of promoting the health, safety or general welfare of the public . . . ." Va. Code § 15.1–489. The county may "regulate, restrict, permit, prohibit and determine" uses of land. Va. Code § 15.1–486.

> The General Assembly has authorized the Director of the Department to issue licenses for shooting preserves "when in his judgment operations under such licenses will result in an increase in hunting *and* will otherwise be in the public interest." Va. Code § 29.1–600 (emphasis added).

Petitioner's Rebuttal Memorandum, p. 23.

The Court will concede that given broad interpretation consideration of the "public interest" contemplates consideration of the health, safety and welfare of persons living around the shooting preserve. However, clearly the powers granted to the State Game Board do not include any zoning power. Va. Code § 29.1–1–3. It is also clear that:

> [a]bsent from the items the Director must consider are those items which the board of supervisors must consider before it enacts a zoning ordinance and assigns a zoning classification to a landowner's property:
>
> "Zoning ordinance and districts shall be drawn and applied with reasonable consideration for the existing use and character of property, the comprehensive plan, and suit-

ability of property for various uses, the trends of growth or change, the current and future requirements of the community as to land for various purposes as determined by population and economic studies and other studies, the transportation requirements of the community, the requirements for airports, housing, schools, parks, playgrounds, recreation areas and other public services, the conservation of natural resources, the preservation of flood plains, the preservation of agricultural and forestal land, the conservation of properties and their values and the encouragement of the most appropriate use of land throughout the county or municipality." Virginia Code, § 15.1–490.

Reply Memorandum, p. 19.

In the Court's view, the powers of the two bodies, the State Game Board and the BZA do not overlap. Tullidge's license obtained from the State Game Board only means he has cleared a licensing hurdle. It does not follow that the issuance of the aforesaid license negates the necessity to meet zoning requirements. An extensive review of the authorities submitted leads the Court to conclude "no manifest intention on the part of the legislature" to grant such sweeping and unbridled authority to the State Game Board or its Director. *City of Norfolk v. Tiny House, Inc.*, 222 Va. 414, 281 S.E.2d 826 (1981).

The Virginia Supreme Court has made clear that "[i]f both the statute and ordinance can stand together, courts are obliged to harmonize them, rather than nullify the ordinance." *Board of Supervisors of Loudoun County v. Pumphrey*, 221 Va. 205, 269 S.E.2d 361 (1980). Looking at the lack of conflict between the two bodies there is no reasonable doubt concerning the existence of the local government's power to act in this area. This lack of reasonable doubt precludes preemption.

B. *Does the Augusta County Zoning Ordinance Allow the BZA to Require a Special Use Permit for the Property in Question?*

A court reviewing a decision of a local zoning board interpreting a local ordinance must give the local zoning board a presumption of correctness. This presumption may only be overcome by a showing that the local zoning board's decision is plainly wrong or the board erroneously applied principles of law. *Board of Zoning Appeals v. Glasser Bros. Corp.*, 242 Va. 197, 408 S.E.2d 895 (1991); *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 352 S.E.2d 727, 732–33

(1987); *Hopkins v. O'Meara*, 197 Va. 202, 89 S.E.2d 1 (1955). The only significant principles of law in question are those involving preemption. As section A demonstrates, there has not been an erroneous application of the law concerning preemption. One is left only with the issue of whether the BZA's decision is plainly wrong.

For the BZA's decision to be plainly wrong, the appellant must show that the BZA's interpretation of the zoning regulations are in violation of the purpose and intent of the zoning ordinance. *Masterson*, 223 Va. at 44. The general purpose of the Augusta County Zoning Ordinance is to promote "the health, safety and general welfare of the public." *County of Augusta Zoning Ordinances* § 25–1 (1992).[3] Tullidge indicates no legitimate reason to find that the BZA's failure to classify Tullidge's use of the property in question as "permitted" is violative of the zoning ordinance's purpose. The BZA, using the discretion granted them, decided that Tullidge's property, put to the uses Tullidge has proposed, requires a special use permit. This decision arguably promotes the general welfare of the public. Because of the BZA's presumption of correctness, arguably promoting the general welfare of the community is enough for the court to find the BZA did not violate the purpose of the zoning ordinance.

The BZA's decision, in addition to not violating the purpose of the zoning ordinance, must reflect in the record the reasoning behind the decision. *Ames v. Town of Painter*, 239 Va. 343, 348, 389 S.E.2d 702, 705 (1990); *Packer v. Hornsby*, 221 Va. 117, 267, S.E.2d 140 (1980). The BZA has reflected the reasoning behind their decision. In the BZA's conclusion, they spell out their reasoning. Three factors together lead to the conclusion: that hunting takes place; the game hunted is stock or pen raised on the premises as opposed to being found in its natural state; and, that hunters pay a fee to hunt. These factors taken as a whole were enough for the BZA to require a special use permit. Record, p. 509.

---

[3] The purpose of the zoning regulations for A-Agricultural District are "to allow areas of the county to be devoted to agricultural use; to conserve, protect, and encourage the development and improvement of agricultural land for the production of food and other agricultural products; to reduce the loss of agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance; to retain major areas of natural ground cover for conservation purposes; and to retain public forests and preserves." *County of Augusta Zoning Ordinance* § 25–16 (1992).

The three factors viewed together move the property outside of any use listed under Agricultural Districts. The Zoning Ordinance does have a catch-all. Under this catch-all, the BZA has the discretion of requiring a special use permit for any "uses which are similar to" the other uses listed under the special use section. *County of Augusta Zoning Ordinance*, § 25–17(b)(38). The BZA, in their conclusion holding that Tullidge's property must have a special use permit, base their conclusion on the "similar to" special use section.[4] The BZA's rationale is not plainly wrong, and the record reflects the reasoning behind their decision. For these reasons, the decision should not be disturbed.

---

[4] In their conclusion, the BZA erroneously refer to § 25–17(b)(37) not (38); however, they do refer to it as the "similar to" section.