# Board of Zoning Appeals of the City of Chesapeake

## v.

## Glasser Brothers Corporation

Record No. 901582

September 20, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell,* Whiting, Lacy, and Hassell, JJ.

---

* Justice Russell participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1991.

*Jan L. Proctor, Assistant City Attorney (Ronald S. Hallman, City Attorney; Martin M. McMahon, Assistant City Attorney*, on brief), for appellant.

*Diane E. McNamara (Glasser and Glasser*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we decide whether a property owner introduced sufficient evidence to require a board of zoning appeals to grant him a variance.

Glasser Brothers Corporation (Glasser) owns an unimproved rectangular corner lot fronting 37-½ feet on B Street and 100 feet on 19th Street in the City of Chesapeake. In 1969, the city adopted a zoning ordinance that placed Glasser's lot in District R-SFA-1, described in the ordinance as "characteristic of two-story residences on small lots having limited land area."

The zoning ordinance contains a number of minimum setback requirements. Section 1-2 of the ordinance requires six-foot side yard setbacks in the R-SFA-1 district except where side yards abut a public street. In that instance, the side yard setback is 15 feet. Because Glasser's lot is 37-½ feet wide, any residence built on this lot in conformity with the aggregate side yard setback requirement of 21 feet, and fronting on B Street, could not exceed 16-½ feet in width. Also, no house could be built on Glasser's lot

to front on 19th Street because of the required 20-foot front yard and 25-foot rear yard setbacks.

On October 6, 1989, Glasser filed an application with the Chesapeake Board of Zoning Appeals (the board) seeking a nine-foot variance to the required 15-foot minimum setback along 19th Street to permit the width of any residence that might later be built on the lot to be increased to 25-½ feet.

The minutes of the public hearing before the board on October 26, 1989, disclose that Glasser did not want to build a house on the lot, but merely wanted to obtain a variance in order to make the lot marketable. The minutes also reflect the following paraphrased statements of Stuart D. Glasser, a vice-president of Glasser:

[The required 21-foot aggregate side yard setbacks make] the lot unusable and unmarketable.

. . . [Glasser] has tried to get rid of the lot but can't get an offer because it can't be used.

. . . [Glasser] can't sell the lot because they can't build on it. [Mr. Glasser] cited prospective buyers who stated that they would buy the lot if they could build on it.

. . . .

. . . [T]o build a 16-½ foot wide house is not practical, reasonable or marketable . . . .

[T]he house across [19th street] is only five feet two inches from the street.

Some board members stated that they would like to see building plans and suggested that such plans could be proffered by a prospective purchaser who could purchase the lot subject to the grant of a satisfactory variance. Mr. Glasser responded that "he had already run into that situation and the applicant wanted him to secure the variance first and then he would buy the lot." In reply to Mr. Glasser's assertion that "the lot cannot be used for any purpose other than to plant trees on," one board member "cited even smaller lots built on in Chesapeake."

The board denied Glasser's application on the ground that "no hardship or unique condition has been shown and/or the problem will not be properly solved by the issuance of a variance." Glasser appealed to the circuit court.

On September 5, 1990, at a hearing before the trial court, Glasser presented evidence; the board relied upon the documents, including the minutes of its public hearing, filed in response to the writ of certiorari. The record does not indicate the nature of Glasser's evidence, but Glasser does not claim that its evidence was substantially different from the evidence it presented to the board at the public hearing. The trial court reversed the decision of the board and granted Glasser a five-foot variance from the required 15-foot setback. The board appeals.

The standard of review applicable to a board of zoning appeals' decision is well settled.

> The decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance.

*Masterson* v. *Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987). And, because the board exercises a discretionary judgment in deciding whether the evidence presented before it justifies the grant of a variance, the board's decision can be overturned only for "arbitrary or capricious conduct constituting a clear abuse of discretion." *Board of Zoning Appeals* v. *O'Malley*, 229 Va. 605, 608, 331 S.E.2d 481, 483 (1985).

Next, we consider the pertinent statutory provisions that authorize boards of zoning appeals to grant setback variances. Code § 15.1-495(b) vests boards of zoning appeals with the power and duty to grant setback variances "*as will not be contrary to the public interest*, when, owing to special conditions a literal enforcement of [the zoning ordinance's] provisions will result in unnecessary hardship [and] a property owner *can show*" one of several listed conditions relative to its property. (Emphasis added.) The provision that Glasser relies upon to authorize the variance is that "the strict application of the [zoning] ordinance would effectively

prohibit or unreasonably restrict the utilization of the property." Code § 15.1-495(b).

Even so, Code § 15.1-495(b) requires that

[n]o such variance shall be authorized by the board unless it finds:

(1) That the strict application of the ordinance would produce undue hardship.

(2) That such hardship is not shared generally by other properties in the same zoning district and the same vicinity.

(3) That the authorization of such variance will not be of substantial detriment to adjacent property and that the character of the district will not be changed by the granting of the variance.

■ In deciding whether a strict application of the setback requirement would cause an unnecessary hardship, the board should weigh the hardship that strict application would impose upon an applicant against the potential detriment to the public interest and adjacent properties should the variance be granted. *See Board of Zoning Appeals* v. *Fowler*, 201 Va. 942, 946-47, 114 S.E.2d 753, 756-57 (1960). Furthermore, if the board were to authorize Glasser's setback variance, it "may impose such conditions regarding the location, character and other features of the proposed structure or use as it may deem necessary in the public interest." Code § 15.1-495(b).

We now consider Glasser's evidence in the light of these statutory provisions. Glasser's conclusory statements about its inability to sell the property shed little light on the hardship issue. The statements contain no information: (1) establishing the market value of its property as an unimproved lot, or as a lot improved by either a 16-½ foot wide residence or a 25-½ foot wide residence; (2) indicating Glasser's asking price; (3) stating how long the lot had been for sale; or (4) describing any efforts Glasser made to sell the property, including its advertising efforts, if any, or whether the lot had been listed with a real estate agent and for how long. Nor did Glasser offer any evidence as to the type of residence that might be built upon the lot.

■ Such evidence would have assisted the board in weighing the relative burdens imposed upon Glasser and the public and in discharging the board's specific statutory duties of deciding: (1) whether Glasser's proposed reduction of visibility at the corner of 19th and B streets would "not be contrary to the public interest"; (2) whether the board should "impose such conditions regarding the location, character and other features of the proposed structure . . . as it may deem necessary in the public interest"; and (3) whether Glasser's proposed variance would be "of substantial detriment to adjacent property." Code § 15.1-495(b).

In the absence of such evidence, we cannot say that the board abused its discretion in denying the variance on the ground of Glasser's failure to show that "a literal enforcement of [the zoning ordinance's] provisions [would] result in unnecessary hardship." Code § 15.1-495(b). We are not deciding that such evidence is essential to the grant of every variance; we are deciding only that its absence in this case was a sufficient justification for the board's decision to deny the requested variance.

Accordingly, because Glasser failed to produce evidence sufficient to overcome the presumption of the correctness of the board's decision, the trial court erred in reversing the board's decision. Therefore, we will reverse the judgment of the trial court and dismiss Glasser's application for a variance.

*Reversed and dismissed.*