REGINALD C. FOSTER, ET AL.

V.

DANIEL D. GELLER, ET AL.

Record No. 931783

BOARD OF ZONING APPEALS OF THE
CITY OF ALEXANDRIA, ET AL.

V.

DANIEL D. GELLER, ET AL.

Record No. 931808

November 4, 1994

Present: All the Justices

*Barbara P. Beach (Amy B. Barnes,* on briefs), for appellants. (Record No. 931783)

*William R. Curdts (Dunton, Simmons & Dunton,* on brief), for appellees. (Record No. 931783)

*Ignacio Britto Pessoa (Philip G. Sunderland, City Attorney,* on brief), for appellants. (Record No. 931808)

*William R. Curdts (Dunton, Simmons & Dunton,* on brief), for appellees. (Record No. 931808)

JUSTICE LACY delivered the opinion of the Court.

This controversy arose when the contract purchaser of an undeveloped lot, Daniel D. Geller, asked the Director of the Department of Planning and Community Development of the City of Alexandria (the director) to confirm his understanding that a residence could be built on the lot. The lot is approximately 9,000 square feet in size and is situated on terrain described as a ravine or a gulch. In August 1992, the director applied "the fixed point measurement method" and determined that the undeveloped lot did not meet the lot width requirements at the building setback lines established by the zoning ordinance.[1] Nevertheless, because the fixed point measurement method had not been consistently applied in the past, the director stated that he would apply that method prospectively only and that the lot could be developed subject to certain conditions.

Following this determination, the owners of adjacent properties, Michael J. and Linda Oliver (the Olivers) and Reginald C. Foster (collectively, the neighbors), along with the North Ridge Citizens' Association, appealed the matter to the Board of Zoning Appeals of the City of Alexandria (BZA). They contended that the director's decision was wrong because it allowed the development of a substandard lot without a special use permit as required by §§ 12-400 *et seq.* of the Zoning Ordinance of the City of Alexandria (the Ordinance). The BZA, after a hearing, agreed with the neighbors and reversed the decision of the director, finding that the director had erred "in his interpretation of allowing the appli-

---

[1] The fixed point measurement method requires that the minimum lot width be met at both the minimum front yard setback line and the actual building line. The alternative is "the floating location measurement method" which allows compliance with the minimum lot width at any setback line where the building hypothetically could be built.

cant to go forward without following proper procedure as to substandard lots."

Geller filed a petition for a writ of certiorari in the circuit court pursuant to Code § 15.1-497. In his petition, Geller argued that the director's decision was the "only fair way to treat this property owner" and that to do otherwise "would have created an undue hardship upon the property owner."[2] The neighbors and the record owner of the lot, Anthony J. Stanley and his wife, Karen V. Stanley (the owners), intervened in the circuit court proceedings.

The trial court took no new evidence and considered the matter on the record before the BZA and on the briefs and argument of counsel. The trial court reversed the BZA and reinstated the decision of the director, stating that the BZA's action in reversing the director's decision to apply the fixed point measurement method prospectively only was arbitrary and capricious, an abuse of discretion, and not supported by the record. We awarded the BZA and the neighbors each an appeal.

■ We begin by briefly stating the established principles guiding the judicial review of a decision of a board of zoning appeals. The BZA's decision is presumed to be correct and can be reversed or modified only if the trial court determines that the BZA applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinance. *Board of Zoning Appeals v. University Square Assoc.*, 246 Va. 290, 295, 435 S.E.2d 385, 388 (1993) (*quoting Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987)). The party challenging the BZA's decision has the burden of proof on these issues.[3] *Id.*

---

[2] In his petition for writ of certiorari, Geller also appealed the BZA's determination that the neighbors' appeal was timely and the director's finding that the lot was substandard. These issues are not before us, however, because Geller did not appeal the trial court's determination that the neighbors' appeal to the BZA was timely. In addition, Geller conceded that he could not pursue the question whether the lot was substandard because the issue was not appealed to the BZA.

[3] The trial court used the phrase "arbitrary and capricious" in describing the action of the BZA. That phrase generally refers to the standard of review applied when reviewing legislative actions. *See Ames v. Town of Painter*, 239 Va. 343, 349, 389 S.E.2d 702, 705 (1990); *Wilhelm v. Morgan*, 208 Va. 398, 402, 157 S.E.2d 920, 923 (1967); *Southern Ry. Co. v. City of Richmond*, 205 Va. 699, 706, 139 S.E.2d 82, 87 (1964). The trial court, however, cited *Board of Zoning Appeals v. Fowler*, 201 Va. 942, 114 S.E.2d 753 (1960), in support of its decision. *Fowler* involved the grant of a variance by the BZA, an adminis-

■ Geller contends that the trial court was not required to afford the BZA's opinion a presumption of correctness in this case because retroactivity is a purely legal issue which the trial court could consider de novo. We reject this contention. The review of a decision of a BZA on a petition for writ of certiorari is limited to the scope of the BZA proceeding. The reviewing court may only consider the correctness of the BZA's decision and must apply the standard of review set out above. *Id.* at 294-95, 435 S.E.2d at 388. Geller's appeal to the trial court consisted solely of his petition for a writ of certiorari. Therefore, in this case, the issue of prospective or retroactive application of the fixed point measurement method must be considered in the context of the BZA's decision. That decision is presumed correct and can be reversed only if Geller shows that it was plainly wrong or based on erroneous principles of law.

■ The BZA determined that the decision of the director was erroneous because it did not comply with the requirements of the zoning ordinance for development of substandard land. Section 12-405 of the Ordinance provides that:

> From and after September 16, 1989, the remedy and procedure provided in this Section 12-400 shall be [the] exclusive remedy and procedure for the use and development of substandard lots in the zones herein designated, and any use or development of such lots in a manner not herein provided for and authorized shall be conclusively presumed to be contrary to the public interest and contrary to the intended spirit and purpose of this ordinance.

Section 12-400 of the Ordinance sets out the procedure for obtaining a special use permit. The plain wording of this section prohibits the development of substandard lots without first obtaining a special use permit. Substandard lots are those that do not meet the minimum width requirements. City of Alexandria, Va., Zoning Ordinance, § 12-401 (1992). Therefore, although the director did not use the word substandard, his conclusion that the lot did

trative function. While the *Fowler* opinion referred to "arbitrary and capricious" actions, the Court in *Fowler* applied the clearly erroneous or plainly wrong standard to review the action of the BZA. *Id.* at 948, 114 S.E.2d at 758. Geller argues that the phrase "arbitrary and capricious" is synonymous with the "plainly wrong" test of the applicable standard of review.

not meet the minimum lot width requirements using the fixed point measurement method brought the lot within the zoning provisions governing substandard lots.[4] Consequently, it is clear that, by authorizing construction on the lot, the director's decision allowed the development of a substandard lot without following the special use permit procedure required under § 12-405.

We cannot say that the BZA's decision was plainly wrong or based on erroneous principles of law. In *Hurt v. Caldwell*, 222 Va. 91, 279 S.E.2d 138 (1981), we held that a building permit was void because the zoning ordinance required a conditional use permit for development of the land and the applicant had not initiated that procedure. The county official was "without authority" to issue the permit "unless and until" the county code provisions had been met. *Id.* at 97-98, 279 S.E.2d at 142. *See also Segaloff v. City of Newport News*, 209 Va. 259, 262, 163 S.E.2d 135, 137 (1968) (city official cannot authorize a violation of zoning ordinance).

■ Here, a special use permit is required for the development of substandard land.[5] Accordingly, that process could not be circumvented simply by adhering to conditions prescribed by the director. The practical result of the director's decision was to alter the provisions of the Ordinance by imposing a new effective date for the special use permit requirement. Neither the BZA nor the director, however, possesses the power to amend or repeal portions of zoning ordinances. *Belle-Haven Citizens Ass'n, Inc. v. Schumann*, 201 Va. 36, 41-42, 109 S.E.2d 139, 143 (1959).

■ There is nothing in the record to contradict the BZA's conclusion that the director's decision to allow the conditional development of a substandard lot was in direct conflict with the zoning ordinance establishing the special use permit procedure as the exclusive method of developing substandard land. Therefore, under the prescribed standard of review, the BZA's determination that the director could not take action contradicting another provision of the Ordinance was not plainly wrong or based on erroneous principles of law.

---

[4] Although noting his disagreement, Geller conceded while appearing before the BZA that the lot "was a substandard lot." Geller's contention here that the lot is not substandard is based solely on the prospective application of the fixed point measurement method.

[5] As pointed out by the BZA, development of substandard land also could occur by amendment to the Ordinance.

Nevertheless, Geller argues that the director's decision was correct because it was based on the proper application of equitable principles and that "the BZA record does not contain 'substantial evidence' supporting its decision." This argument stems from a 1979 letter issued by the zoning administrator stating that the lot was buildable although a variance might be necessary. In light of this letter and reliance on it, Geller argues, the director was entitled to consider whether the "new" fixed point measurement method should be applied to this lot.[6]

■ We reject Geller's argument because it is based on a faulty premise. The authority of both the director and the BZA is established and limited by statute and city ordinance. *Lake George Corp. v. Standing*, 211 Va. 733, 735, 180 S.E.2d 522, 523 (1971). The director is provided generalized administrative authority to interpret and apply zoning ordinances. Code § 15.1-491(d); City of Alexandria, Va., Zoning Ordinance, § 11-101; City of Alexandria, Va., Charter, § 9.17. This general grant of authority, however, is not unlimited. Although statutes and ordinances delegating zoning authority may be broadly construed to prevent zoning officials from becoming unnecessarily hamstrung in their efforts to enforce zoning ordinances, *see, e.g., Gwinn v. Alward*, 235 Va. 616, 622, 369 S.E.2d 410, 413 (1988), administrative zoning actions must be grounded within the statutory framework provided. *See, e.g., Segaloff*, 209 Va. at 261, 163 S.E.2d at 137.

■ No statute or ordinance specifically addresses the action taken by the director in this case. Consequently, if the action was proper, it must be based on the director's implied authority. *See, e.g., Board of Zoning Appeals v. Cedar Knoll, Inc.*, 217 Va. 740, 743, 232 S.E.2d 767, 769 (1977). The doctrine of implied authority, however, "should never be applied to create a power that does not exist or to expand an existing power beyond rational limits." *Commonwealth v. County Board of Arlington County*, 217 Va. 558, 577, 232 S.E.2d 30, 42 (1977).

■ If the director's action is viewed as a decision to apply the Ordinance requirements prospectively only, it clearly exceeds

---

[6] The neighbors argue that the rule establishing the measurement method was not a "new" rule. They characterize the method as one inconsistently applied in the past, pointing to at least one instance in the record in which the fixed point method had been applied to another lot. Our disposition of this case does not require resolution of this conflict, and we will simply assume that, as to this lot, the rule was a "new" rule for purposes of this argument.

the limits of the director's authority because, as noted above, it allows the director to establish a new effective date for the ordinance. Similarly, if the director's action is viewed as allowing an exception to the zoning requirements for equitable reasons, it likewise cannot be justified as an implied power. Legislative bodies establish zoning requirements and permissible exceptions to those requirements. These bodies have authorized the use of equitable considerations only when the issue is whether to grant a special use permit, *see, e.g., Matthews v. Board of Zoning Appeals*, 218 Va. 270, 274, 237 S.E.2d 128, 130 (1977) (allowing special use permits for "hardship cases"), or a variance. Code § 15.1-495(b)(1); *Board of Zoning Appeals v. Glasser Bros. Corp.*, 242 Va. 197, 201, 408 S.E.2d 895, 897 (1991). To sanction the director's use of equitable considerations as an additional exception to the zoning requirements "creates a power that does not exist" and, in this case, improperly extends the doctrine of implied authority. There is nothing in the statutes or Ordinance which permits the director or the BZA to excuse compliance with the special use permit requirement based on equitable reasons.[7]

In conclusion, we hold that the BZA's decision was not based on erroneous principles of law, is supported by the record, and, therefore, is not plainly wrong or in violation of the purpose and intent of the Ordinance. Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of the BZA and the neighbors.

*Reversed and final judgment.*

---

[7] Geller points out that Code § 15.1-491(d) has been amended to allow administrators of zoning ordinances to make legal decisions. Acts 1993, ch. 672. We need not determine whether this amendment includes the type of equitable considerations such as those at issue here because the amendment was not effective during the proceedings in this case.