# CIRCUIT COURT OF WARREN COUNTY

Carolinas Cement Co.,
t/a Roanoke Cement Co.

v.

Zoning Appeals Board
of Warren County et al.

Case No. (Law) 99-263

Allegheny Power Co. et al.

v.

Zoning Appeals Board
of Warren County et al.

Case No. (Law) 99-268

December 17, 1999

BY JUDGE JOHN E. WETSEL, JR.

These consolidated cases came before the Court on December 15, 1999, on an appeal from a decision of the Warren County Board of Zoning Appeals that the proposed use of a road to service a proposed cement storage and

distribution facility was not a grandfathered use and its denial of a variance to expand the use of the service road. Thomas M. Lawson and Deborah M. Chandler, Esquires, appeared for Carolinas Cement Company; Clifford L. Athey, Jr., and Richard R. G. Hobson, Esquires, appeared for Bowden and Weddle; Douglas W. Napier, Esquire, appeared for the Board of Zoning Appeals; and Benjamin M. Butler, Esquire, appeared for the Allegheny Power Company.

The record was then argued, and after consideration the Court decided to affirm the decision of the Board of Zoning Appeals.

## I. *Statement of Material Facts and Proceedings*

### A. *Statement of Material Proceedings*

The Land Owners, by an earlier Writ of Certiorari, sought and were awarded judicial review of portions of the Warren County Board of Zoning Appeals' decision concerning Roanoke Cement's proposed project. On August 30, 1999, this Court affirmed the Board of Zoning Appeals' decision that a new access road to support an industrial use cannot be constructed in the agricultural district and further held that the Board on Zoning Appeals' reliance on a grandfathered use of the access road in the agricultural district was plainly wrong because there was "no evidence in the record of any previous heavy tractor trailer use of the existing road." The Court remanded the case to the Board of Zoning Appeals "for the purpose of determining whether Roanoke Cement has a grandfathered right to use the access road for the purposes of using heavy industrial tractor trailer trucks to pass over the access road distributing its cement."

On October 6, 1999, the Board of Zoning Appeals, upon remand from this Court, held a public hearing in which the BZA took evidence concerning the historical use of the non-conforming access road and found by unanimous vote:

> a. That Roanoke Cement's proposed use of the surfaced access road is located in an agriculturally zoned district and is used to access an industrially zoned property and is therefore a non-conforming use of the land upon which the road is located; and
>
> b. That Roanoke Cement Company has a grandfathered right to use the existing road to the current use level of 5 to 10 vehicles per

month with an occasional oil truck to change the oil in the maintenance equipment in the maintenance shed and beyond the substation approximately 5 times per month.

On October 6, 1999, the BZA also held a public hearing on an application for a variance filed by Roanoke Cement requesting that any grandfathered right they possessed to use the access road be expanded to permit heavy industrial truck traffic sufficient to support their proposed cement and fly ash distribution facility. The BZA by unanimous vote denied the variance finding, among other things, that "[t]he BZA cannot grant a variance for a change in use of the agriculturally zoned parcel."

Roanoke Cement Company and the Allegheny Power Company appealed both of the October 6, 1999, BZA decisions by Writ of Certiorari to this Court.

## B. *Statement of Material Facts*

Roanoke Cement Company plans to construct a cement and fly ash distribution facility on Parcel 57A (zoned agricultural) and Parcel 57A1 (zoned industrial) as shown on Tax Map 12 (the "Property"). Roanoke Cement Company has leased the Property from Allegheny Power since October 30, 1998.

No industrial use of Parcels 57A and 57A1 has existed on the Property since the Power Company demolished its power plant around 1984. Parcel 57(A)(1) is vacant, and the access road to it serves only an unmanned electric transformer substation located in an agricultural district Parcel 57(A). *See* Exhibits 1, 5, 11, 18, and 22.

The only current road access to the Property is via a .9-mile private access road that extends from Parcel 57A1 across Parcel 57A to State Route 658. Most of the road is located on Parcel 57A, which is zoned agricultural.

In 1949, the Power Company constructed a steam electric generating plant on the Property. After the power plant's construction, it consumed 400 tons of coal per day (Exhibit 30), which was delivered by both railroad car and by coal delivery trucks utilizing the private access road in question.

In 1973, the power plant was converted from coal to oil fueled furnaces. (Exhibit 31: Affidavit of Joe Swiger; Exhibit 37, Transcript of October 6, 1999, BZA Public Hearing.) From 1973 to 1984, the power plant was fueled by oil delivered by tanker trucks utilizing the access road (Exhibit 31), but the plant was only used occasionally after that time to generate electricity at times of peak demand or when other plants were unavailable. (Exhibits 31, 37.)

After proper advertisement and a public hearing on June 26, 1973, the Warren County Board of Supervisors approved the first zoning ordinance for Warren County. (Exhibit 32.)

Appendix A-II of the 1973 Warren County Zoning Ordinance listed the power plant site (Parcel 57(A)(1)) as a commercial/industrial district. However, the parcels on which the access road to the plant was located were zoned agricultural, thereby making the access road a nonconforming use in the agriculturally zoned Parcel 57(A). (Exhibit 32.)

Article 3, Section 1, of the 1973 Warren County Zoning Ordinance permitted Potomac Edison's heavy industrial use of the access road located on agriculturally zoned Parcel 57(A) to continue. However, pursuant to Section 3 of Article 3 of the 1973 Warren County Zoning Ordinance, when Potomac Edison discontinued the heavy industrial use of the roadway around 1984, the nonconforming use was deemed abandoned after two years of nonuse.

In 1984, the Power Company razed its power plant and constructed an unmanned electric substation on Parcel 57(A) zoned agricultural (Exhibit 37, Transcript of BZA Hearing; Testimony of Joe Swiger pp. 108-32) and a small storage building for storage of electrical parts and equipment, which building is located on Parcel 57(A) zoned agricultural. (Exhibit 31 and Exhibit 37, Transcript of BZA Hearing pp. 108, 111, 112, 131, 132.)

In 1984, the Power Company also repaired and used the access road to maintain the unmanned electric substation located on Parcel 57(A) zoned agricultural; however, Potomac Edison Company did not repair, maintain, or use the access road beyond the location of the unmanned electric substation after 1984. (Exhibit 31 and Exhibit 37, Transcript of BZA Hearing.)

After the demolition of the power plant and the construction of the substation in 1984, no more than five to ten light trucks per month used the roadway to access and maintain the unmanned substation, and no more than five vehicles per month used the roadway beyond the substation to access Parcel 57(A)(1) zoned industrial. (Exhibit 31 and Exhibit 37, Transcript of BZA Hearing.)

With the exception of one oil tanker every eight years serving the substation, no heavy industrial tractor-trailer trucks have used the access road since 1984. (Exhibit 37, Transcript of BZA Hearing.)

On August 18, 1992, following advertisement and public hearing, the Warren County Board of Supervisors adopted a new zoning ordinance. (Exhibit 33.)

Pursuant to Section 2.2 of the 1992 Ordinance, Parcel 57(A) continued to be zoned agricultural, and Parcel 57(A)(1) continued to be zoned industrial

even though there was then no existing industrial use on Parcel 57(A)(1) in 1992. (Exhibit 33.)

On February 8, 1999, Zoning Administrator Gordon D. Jones issued a determination (the "Zoning Determination") confirming the location and zoning classification of Parcel 57(A)(1). *See* Exhibit 34. The Zoning Determination and attached plat confirmed that both the private access road and the existing electric substation are located within the agricultural district on Parcel 57(A). The Zoning Determination was sent directly to Scott Stickley, Engineer for Roanoke Cement Company, and Ralph Woolard of Allegheny Power. The written determination stated that this determination would be final and un-appealable unless appealed within thirty days in accordance with Va. Code § 15.2-2311. That same day, Allegheny Power forwarded a copy of the Zoning Determination to Bob Omer of Roanoke Cement Company, soliciting Roanoke Company's position of "what is zoned industrial" and informing Roanoke Cement Company that any challenge to the Zoning Determination must be brought within thirty days. *See* Exhibit 35. Neither Allegheny Power nor Roanoke Cement Company appealed the Zoning Determination.

## II. *Conclusions of Law*

An appeal of a BZA decision to a circuit court is not a trial *de novo*, and the circuit court's function is limited to examining the scope of the BZA proceeding and considering the correctness of the BZA decision. *Foster v. Geller*, 248 Va. 563, 449 S.E.2d 802 (1994). "The decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or was plainly wrong and in violation of the purpose and intent of the zoning ordinance." *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727 (1987). Although it may not act arbitrarily, the Board of Zoning Appeals is clothed with discretionary power. *Board of Zoning Appeals of the Town of Abingdon v. Combs*, 200 Va. 471, 106 S.E.2d 755 (1959). Boards of zoning appeals exist in order to apply their expert discretion to matters coming within their cognizance. *Board of Zoning Appeals v. Fowler*, 201 Va. 942, 948, 114 S.E.2d 753, 758 (1960) (granting a variance). Where a board of zoning appeals "exercises a discretionary judgment in deciding whether the evidence presented before it justifies the grant of a variance, the board's decision can be overturned only for 'arbitrary and capricious conduct constituting a clear abuse of discretion'." *Board of Zoning Appeals v. Glasser Bros. Corp.*, 242 Va. 197, 200, 408 S.E.2d 895,

897 (1991) (*quoting Board of Zoning Appeals v. O'Malley*, 229 Va. 605, 608, 331 S.E.2d 481, 483 (1985)). In other words, "the court cannot substitute its discretion for that of the BZA." *Edenton v. Zoning Appeals Bd.*, 37 Va. Cir. 176, 179 (Spotsylvania County 1995) (Ledbetter, J.) (internal citations omitted). The BZA decisions are supported by the law and the evidence.

This Court has already held that the industrial use of a road located in a district zoned agricultural is a nonconforming use. *See* August 30, 1999, Opinion and Final Order, Warren County Law Nos. 99-158 and 99-168. Accordingly, Roanoke's ability to use the existing road on Parcel 57A for high volume tractor trailer delivery of cement and fly ash requires that Roanoke establish that it has a vested or "grandfathered" right to put the road to the proposed use.

"Every landowner enjoys a right to have reasonable access to his land, and this is true whether his use is residential or commercial," and "the number of access drives available to a commercial property may be limited." 83 Am. Jur. 2d, *Zoning and Planning*, § 219. However, it is also true, as further stated in 83 Am. Jur. 2d, *Zoning and Planning*, § 223, that:

> The use of land in a residential district as a means of ingress and egress to land or buildings in a commercial zone for commercial purposes constitutes a commercial use in violation of zoning restrictions which exclude commercial uses in residential districts. Thus, the use of property in a residential zone to gain vehicular access to business property is a commercial use, and an ordinance excluding commercial or industrial uses from a residential district excludes the maintenance of driveways which provide ingress and egress for such uses.

The prohibition on using access roads for uses contrary to the designated use of the lands upon which they are constructed was discussed in *Gilbert's Corner Limited Partnership et al. v. Loudoun County Board of Zoning Appeals et al.*, 1990 W.L. 751280. In *Gilbert's Corner*, the Circuit Court of Loudoun County considered the use of an access road in an agricultural zoning district serving a commercial use in an adjacent commercial zoning district and stated at page 3 of the opinion (reported in 1990 W.L. 751280):

> The Court agrees with the Zoning Administrator that a placement of off site roadways ... in the A-3 portion of the property constituted a

"use" of the properties within the contemplation of the Zoning Ordinance. While the record does not justify a finding that such uses, within the context of the instant site plan application, are "principal uses" within the contemplation of the zoning ordinance, they do constitute "accessory uses." Thus "to the extent such uses are accessory uses, the principal use to which they are subordinate must be a permissible use."

"Zoning ordinances commonly permit a landowner to maintain an accessory or incidental use in connection with a permitted use of land. Such a use may be defined as one customarily incidental and subordinate to the principle use of a building." 83 Am. Jur. 2d, *Zoning and Planning*, § 639. Since the character of the principle or primary use determines the character of the accessory use, an access road to an industrial site is an accessory industrial use. Accessory uses appended to the primary use must all lie within the zoning district which permits the primary use. In this case, the access road, although it is an accessory use, is an industrial use; therefore, it is a nonconforming industrial use in the agricultural district in which it lies.

The BZA determined that Roanoke does not have any vested or grandfathered right to put the road to the proposed, expanded nonconforming use based upon the Power Company's historical use of the road. To retain its exemption from the requirements of a zoning ordinance, the nonconforming use in existence at the time of the enactment of the ordinance must continue; if the use changes in character or is discontinued for more than two years, it loses its exemption. *See* Va. Code § 15.2-2307. At the time the 1973 Zoning Ordinance was enacted, the Power Company used the road for regular truck delivery of coal to the power plant. However, the Power Company discontinued that use of the road when it demolished the plant in 1984, and, since that time, the Power Company has used the road only to access and maintain its unmanned electric substation. This use has involved no more than five to ten trips per month via light truck and one oil tanker every eight years. The BZA determined that Roanoke has a vested or grandfathered right to continue this nonconforming use of the road, but not the five to seven tractor trailer trips per day that Roanoke proposes.

Roanoke and the Power Company argue that they have a vested or grandfathered right to put the road to an "industrial" use consistent with the industrial zoning classification of the adjacent River Site. However, a landowner's nonconforming use right vests in a specific use, not in a general zoning classification or a general use.

> A zoning ordinance may provide that *land, buildings, and structures and the uses thereof* which do not conform to the zoning prescribed for the district in which they are situated may be continued only so long as the *then existing or a more restricted use* continues and *such use* is not discontinued for more than two years … .

Va. Code § 15.2-2307 (emphasis added). A landowner cannot discontinue a particular nonconforming use and then later resurrect that discontinued use. *See Board of Zoning Appeals v. McCalley*, 225 Va. 196, 200, 300 S.E.2d 790, 792 (1983) (trial court erred in holding that landowner's prior nonconforming industrial use of property gave landowner a right to put property to other industrial uses).

While trivial, insubstantial, or reasonably customary and incidental changes in a nonconforming use are permitted, such changes are permitted only within the confines of the specific continuing use and only to the extent that the basic character of that use remains constant. Roanoke's proposed use of the road for tractor-trailer delivery of cement and fly ash is different in nature and exceeds the intensity of the Power Company's use of the road to access and maintain the unmanned electric transformer substation located in the agricultural district.

The 1973 Zoning Ordinance, which was in effect when Allegheny Power demolished the power plant and discontinued its use of the road for tractor trailer delivery of coal, provided that:

> If any nonconforming use, structure or activity is *discontinued for a period exceeding two (2) years after the adoption of this ordinance, it shall be deemed abandoned* and any subsequent use shall conform to the provisions of this ordinance. Use of any such structure for fewer than four consecutive days out of each ninety calendar days shall be considered abandonment. 1973 Zoning Ordinance § 3-3.[3] [Emphasis added.]

---

[3] The current Zoning Ordinance provides that "No nonconforming use and/or structure shall be enlarged or increased, nor extended to occupy a greater area of land than was occupied at the effective date of this chapter unless said enlargement does not result in increase in nonconformity … . Any nonconforming land use or the use of a nonconforming structure abandoned for more than two years shall lose its nonconforming status and any subsequent use of such land and/or structure shall conform to the provisions of this chapter … . Proof of the existing or past existence

This provision, enacted pursuant to an express grant of authority from the General Assembly, *see* Va. Code § 15.2-2307, is in accord with public policy favoring the limitation and ultimate elimination of nonconforming uses. *See City of Chesapeake v. Gardner Enterprises*, 253 Va. 243, 248, 482 S.E.2d 812, 815 (1997) (citing 8A McQuillin, *Municipal Corporations*, § 25.184 (3d ed. 1994)).

To retain its status as a nonconforming use, a use must remain unchanged in its character. For example, in *Knowlton v. Browning-Ferris Industries*, 220 Va. 571, 260 S.E.2d 232, 257 (1979), the Supreme Court of Virginia held that the conversion of a trucking business, engaged in hauling random cargo by utilizing four small trucks, into a specialized commercial enterprise engaged in the collection and disposal of trash with a fleet of eighteen large trucks constituted a change in the character of the use, i.e., it lost its status as a nonconforming use. *Knowlton*, 220 Va. at 576.

*Board of Supervisors v. McCalley*, 225 Va. 196, 300 S.E.2d 790 (1983), arose from an administrative determination that a nonconforming use was unlawful because it was not a continuation of the use which existed when the zoning ordinance was adopted. *Id.* at 197, 300 S.E.2d at 790. The board of zoning appeals determined that the industrial use of property zoned residential for a metal forge and machine shop was not of the same character as the auto body shop which had occupied the premises at the time the zoning ordinance was enacted and that the present use was therefore not exempt from the application of the ordinance. The Supreme Court reversed the trial court and entered a final judgment affirming the board of zoning appeals:

> We held in *Knowlton* ... that where the character of a nonconforming use changes, it ceases to enjoy the exemption which protected the "then existing" use. The Board correctly applied this test.
>
> No additional evidence was presented to the circuit court in the certiorari proceeding, and there was no factual support for an argument that the character of the use had remained the same. Indeed, McCalley made no such contention, but rather argued that because the body shop fit into the category of uses permitted in an Industrial (I-1) zone under the ordinance, then all other I-1 uses would be protected. McCalley sought exemption for his present use because it, too, fits into the I-1 category. The court erred in accepting this as the controlling test, rather than the change-of-character test prescribed by *Knowlton*.

of a nonconforming use shall be the responsibility of the owner and/or user of the nonconforming use."

*Id.* at 199-200, 300 S.E.2d at 792. The Supreme Court further held that, "even if the character of the present use were the same as that of the use which preexisted the zoning ordinance, the exemption extended to nonconforming uses would have been lost by virtue of the abandonment of the original use for a period in excess of two years." *Id.* This occurred when the premises were used from 1974 until 1978 for a boat assembly plant, a use different in character from the original. *Id.*

In this case, the proposed use of the road represents both a new activity (bulk product distribution) and a dramatic increase in the volume and intensity of the use of the road. The commencement of new services as compared to those historically existing have been held to be invalid extensions of a nonconforming use. *See* 83 Am. Jur. 2d, *Zoning and Planning,* § 667. To the extent that Roanoke contends that it has the right to use the road based upon the subsequent use of the road to access the unmanned power station, any such right is limited to a use of that character. The proposed nonconforming use of the access road for high volume tractor trailer shipments of cement and fly ash is a substantial change in the nature, character, and purpose of the prior nonconforming use of the road to service the unmanned transformer station. *Accord Wheelabrator Clean Water Sys., Inc. v. King George County,* 43 Va. Cir. 370 (King George County 1997) (Ledbetter, J.) (where facility was an end point at which sludge is deposited before being redistributed upon adjacent fields, proposed use of facility as transfer point at which sludge would be deposited and then removed and transported off the property to new locations, with a resulting increase in truck usage and volume of materials handled would fundamentally alter the character of the nonconforming use, i.e., it would be impermissible under the zoning ordinance). The proposed use is not only different in character, nature, and kind, but it would also have a substantially different effect on surrounding agriculturally zoned properties. This distinction is not a trivial, insubstantial, or reasonably customary and incidental change of a nonconforming use. *See* 83 Am. Jur. 2d, *Zoning and Planning,* § 699.

The BZA likewise determined that a variance from the requirements of the Zoning Ordinance is unwarranted. Roanoke seeks a variance for the industrial use of a portion of Parcel 57A, which is zoned agricultural. However, a variance "shall not include a change in use which change shall be accomplished by a rezoning or by a conditional rezoning." Va. Code § 15.2-2201.[4] This "restrictive statutory definition" controls the Board of Zoning

---

[4] *Azalea Corp. v. City of Richmond,* 201 Va. 636, 112 S.E.2d 862 (1960), which permitted a variance for the use of residentially zoned land to access commercially

Appeals' power to grant a variance. *See Tolman v. Zoning Appeals Bd.*, 46 Va. Cir. 359, 360-61 (Richmond City 1998) (Markow, J.). Therefore, the Board of Zoning Appeals lacks the power to grant Roanoke a variance to permit the industrial use of the agriculturally zoned parcel. *Accord Pully v. Zoning Appeals Bd.*, 29 Va. Cir. 467, 468 (Virginia Beach 1972) (Russo, J.) (where complainant sought variance permitting him to put property to use inconsistent with its zoning classification, applicant was essentially seeking a use permit and only the City Council had the authority to grant that relief).

Roanoke and the Power Company failed to demonstrate any unnecessary hardship to Parcel 57A, which is subject to the same restrictions as all of the neighboring parcels in the agricultural zoning district. The power company can continue to use its property as it has since 1984. There is no evidence which even comes close to that required to prove a clearly demonstrable hardship approaching confiscation. Neither Allegheny Power nor Roanoke has lost the right to continue the existing use of the River Site. Moreover, the Ordinance permits a number of alternative uses that are not dependent on a more intensive nonconforming use of the agriculturally zoned access road. Therefore, the denial of a variance does not constitute a taking. *Accord Tim Thompson, Inc. v. Village of Hinsdale*, 617 N.E.2d 1227, 1245 (Ill. App. 1993) (No taking occurs where property owner may still utilize its property under economically viable alternative use that is already permitted under challenged zoning classification, even though denial of desired use has occasioned diminution in landowner's perceived ultimate value of property); *DeForest & Hotchkiss Co. v. Planning & Zoning Comm'n*, 205 A.2d 774, 779-80 (Conn. 1964) (That plaintiff, who conducted industrial nonconforming use on residential property, could not realize full value of property as mortgage security under existing zoning classification and that enlargement or change in operation might be prevented did not render classification void as taking).

The term "hardship" is descriptive of a restriction upon the use of land that deprives the landowner of all beneficial or reasonable use. *See Smith v. Board of Zoning Appeals*, 17 Va. Cir. 434, 436 (Caroline County 1989) (Ledbetter, J.) ("In Virginia, the General Assembly has authorized variances only where strict enforcement of the zoning regulations would approach confiscation.") (*citing Packer v. Hornsby*, 221 Va. 117, 267 S.E.2d 140 (1980); *Board of Zoning Appeals v. Nowak*, 227 Va. 201 (1984)); *accord Grayrocks Land Trust v. Town of Hebron*, 614 A.2d 1048 (N.H. 1992) (for

---

zoned land, was decided before the General Assembly defined "variance" to preclude "use variances." "Variance" was undefined until 1978.

purposes of establishing need for a variance, the hardship must involve a deprivation "so great as to effectively prevent the owner from making any reasonable use of his land."); *State v. Winnebago Co.*, 540 N.W.2d 6 (Wis. 1995) (unnecessary hardship means that "no feasible use can be made of the land" without a variance); *Twigg v. Town of Kennebunk*, 662 A.2d 914 (Me. 1995) (an undue hardship occurs when the land would not yield a reasonable return without the variance).

This is an exacting standard. As one commentator has observed:

> The courts are in agreement that it is not enough for the petition for the variance to show that the property in question would be worth more or could be more profitably employed if the restrictions were varied to permit a less restricted use. The mere fact that property can be put to more profitable uses does not alone establish unnecessary hardship where less profitable alternatives are available within the zoning classification.

3 Ziegler, *Rathkopf's The Law of Zoning and Planning*, § 38.02 at 38:18-19 (4th ed. 1999). Accordingly, while financial loss is a factor to be taken into consideration in determining whether a variance should be granted, it does not, standing alone, establish an extraordinary or exceptional situation or hardship approaching confiscation as might justify the granting of a variance. *Corinthia Enterprises, Ltd. v. Board of Zoning Appeals of Loudoun Co.*, 22 Va. Cir. 545, 547 (Loudoun County 1988) (Horne, J.) (*citing Natrella v. Board of Zoning Appeals*, 231 Va. 451, 458, 345 S.E.2d 295, 300 (1986)). Rather, the applicant must submit "dollars and cents" evidence establishing that "no permissible use would yield a reasonable return." *Supkis v. Sand Lake Zoning Board of Appeals*, 642 N.Y.S.2d 374 (N.Y. App. Div. 1996). *See e.g., Azalea Corp. v. City of Richmond*, 201 Va. 636, 643, 112 S.E.2d 862, 867 (1960) (variance to construct driveway on portion of landowner's forty-acre parcel located in city to provide access to portion in county warranted where "no development of any practical sort" was possible absent variance and refusal to grant variance would diminish value of property by 72%).

To be considered a taking for which compensation is required, a regulation must deny the landowner "*all* economically beneficial or productive use of [its] land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) (emphasis added). *See also Board of Supvrs. of Prince William County v. Omni Homes, Inc.*, 253 Va. 59, 72, 481 S.E.2d 460, 467 (1997). The BZA's denial of a variance may have reduced the potential economic value of the River Site. But such a reduction in economic value — even if

dramatic — does not constitute a taking because the mere diminution in the value of the property does not constitute a taking. *See Concrete Pipe & Prods., Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 645 (1993) (citing cases finding no taking when property's value diminished by 75% or by 92.5%).

Moreover, because the Zoning Ordinance predated Roanoke's acquisition of a leasehold interest in the property, Roanoke cannot claim any reasonable investment-backed expectation in developing the property absent compliance with the Ordinance. *See City of Virginia Beach v. Bell*, 255 Va. 395, 498 S.E.2d 414 (1998) (Because zoning ordinance pre-dated landowner's acquisition of property, invocation of ordinance to deny landowner's application to develop property did not entitle landowner to recover in inverse condemnation action against city, despite claim that such denial deprived land of all economically beneficial use; the "bundle of rights" which landowner acquired upon obtaining title to property did not include the right to develop land without restrictions.).

Variances will not be granted when the hardship was created by the owner or its predecessor. *See* 3 Ziegler, *Rathkopf's The Law of Zoning and Planning*, § 38.06[1] at 38:98-99 (4th ed. 1999). Self-inflicted hardship, whether deliberately or ignorantly incurred, affords no basis for the granting of a variance. *Allegheny Enterprises, Inc. v. Board of Zoning Appeals*, 217 Va. 64, 225 S.E.2d 383 (1976). As detailed above, Allegheny Power abandoned its nonconforming use of the existing road for delivery of coal to the power plant when the power plant was demolished in 1984. Allegheny Power's subsequent use of the road has been limited to accessing and maintaining an unmanned electric transformer station.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The BZA's decision that Roanoke Cement Company had a grandfathered right to use the existing road to the current use level of five to ten vehicle trips per month with an occasional oil truck to change the oil in the maintenance equipment in the maintenance shed and beyond the substation approximately five times per month is affirmed.

2. The BZA's decision in BZA Case No. 99-10-01 denying the variance to Warren County Code § 180-79A to expand the existing non-conforming use of the roadway is affirmed.