Present: All the Justices

ADAMS OUTDOOR ADVERTISING, INC.

                                        OPINION BY
v.  Record No. 001386        CHIEF JUSTICE HARRY L. CARRICO
                                        April 20, 2001
BOARD OF ZONING APPEALS OF
THE CITY OF VIRGINIA BEACH, ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    A. Bonwill Shockley, Judge

    This case involves a controversy over two billboards owned

by Adams Outdoor Advertising, Inc. (Adams), located on the same

site on Shore Drive in the City of Virginia Beach.  The

billboards have been in use since their construction in 1967.

In 1987, the City Council of Virginia Beach amended the city

zoning ordinance (CZO) to provide in § 216(a) that "[n]o new

billboards shall be erected within the city limits, effective

immediately."  Thereafter, all preexisting billboards, including

Adams' two Shore Drive billboards, were deemed nonconforming

signs subject to CZO § 215(a), which prohibited the repair of a

nonconforming sign "at a cost in excess of fifty (50) percent of

its original cost unless such sign is caused to comply with the

provisions of this ordinance" (the 50 percent rule).

    On February 24, 1994, the City notified Adams by letter

that the Shore Drive billboards had been condemned and must be

removed because they were "in danger of falling and [were]

unsafe."  Apparently, no further action was taken by the City pursuant to the letter.

On February 6, 1997, Adams submitted applications to the City for building permits to repair the billboards at a combined total cost of $3,000.00, or $1,500.00 per billboard. Adams stated in a letter to the City dated February 7, 1997, that, based upon "the original costs in 1967 [of] at least $6,280," the "requested repairs total $3,000 or less than 50% of the original costs."

At the City's direction, Adams furnished plans for the proposed repair work, including drawings showing the additional work necessary to meet a building code requirement that "the signs as repaired must be able to withstand a 100 m.p.h. wind load."  The permits were then issued.

Adams completed the repairs in July 1997.  In the following December, the City's zoning administrator advised Adams that an investigation revealed that the actual repair work performed on the billboards cost more than the amount stated by Adams in its application of February 6, 1997, in violation of the 50 percent rule.  The actual cost was $18,756.01, as opposed to the proposed $3,000.00 figure.  The zoning administrator told Adams the billboards would have to be removed within thirty days.

On January 9, 1998, Adams appealed the zoning administrator's decision to the City's board of zoning appeals

(the BZA). After a hearing on May 6, 1998, the BZA denied the appeal, upheld the zoning administrator's decision, and declared the building permits void. On June 5, 1998, Adams filed a Petition for Writ of Review with the trial court seeking reversal of the BZA's decision. On June 8, 1998, the trial court issued a writ of certiorari to review the BZA's decision.

On June 4, 1998, Adams applied to the BZA for a variance to allow the repairs already made to the billboards. The zoning administrator returned the application to Adams, stating that under § 105(d) of the zoning ordinance, "requests involving the enlargement, extension, reconstruction or structural alteration of a non-conforming structure must be heard by City Council, not the BZA." On December 2, 1998, the BZA reversed the zoning administrator's determination that the City Council was the appropriate body to consider whether to allow Adams' billboards to remain. On December 29, 1998, the zoning administrator filed a Petition for Writ of Certiorari with the trial court seeking reversal of the BZA's decision of December 2. On December 30, 1998, the trial court issued a writ of certiorari to review the BZA's decision.

On January 12, 1999, Adams wrote the City Attorney of Virginia Beach stating that the billboards were governed by the Federal Highway Beautification Act as well as the Virginia statutes and regulations promulgated by the Commonwealth and its

3

Transportation Commissioner pursuant to the federal act.  Adams stated further that the 50 percent rule was in conflict with and preempted by the promulgated regulations and could not be enforced, with the result that "the City must pay Adams just compensation to require removal."

On January 13, 1999, Adams resubmitted its application to the BZA for a variance to allow the nonconforming billboards to be repaired in excess of 50 percent of the original cost.  On April 21, 1999, the BZA granted Adams a variance.  On April 27, 1999, the zoning administrator filed a Petition for Writ of Certiorari with the trial court seeking reversal of the BZA's decision of April 21.  On April 29, 1999, the trial court issued a writ of certiorari to review the BZA's decision.

The trial court consolidated the three cases and heard them on a stipulated record.  After review of the evidence and consideration of memoranda and arguments of counsel, the court affirmed the BZA's decision of May 6, 1998, which upheld the zoning administrator's decision declaring the building permits void and ordering the billboards removed.  The court also reversed the BZA's decision of December 2, 1998, which reversed the zoning administrator's determination that the BZA did not have authority to hear an application for a variance from the 50 percent rule.  Finally, the court vacated the BZA's decision of April 21, 1999, which granted Adams a variance from the 50

4

percent rule, on the ground that the court's finding that the BZA did not have the authority to hear a variance from the 50 percent rule rendered moot the issue whether the BZA was correct in granting the variance. We awarded Adams this appeal.

Adams first contends that the trial court "erred in its ruling that the BZA lacked the authority to grant a variance." Adams says that at issue in this case is "the interaction between the sign ordinance adopted by the City of Virginia Beach which provides for variances by its BZA to its regulations for billboards (CZO § 215(c)) and the statutory authorization in the Virginia Code for boards of zoning appeals to grant variances, Va. Code §§ 15.2-2201 and 15.2-2309."

In pertinent part, Va. Code § 15.2-2201 defines a "variance" in the context of a zoning ordinance as

> a reasonable deviation from those provisions regulating the size or area of a lot or parcel of land, or the size, area, bulk or location of a building or structure when the strict application of the ordinance would result in unnecessary or unreasonable hardship to the property owner . . . .

In pertinent part, Va. Code § 15.2-2309(2) grants a board of zoning appeals the power to authorize a variance as defined in § 15.2-2201

> where by reason of the exceptional narrowness, shallowness, size or shape of a specific piece of property at the time of the effective date of the ordinance, or where by reason of exceptional topographic conditions or other extraordinary situation or condition of the piece of property, or of the condition, situation, or development of property immediately adjacent thereto, the strict

5

application of the terms of the ordinance would effectively prohibit or unreasonably restrict the utilization of the property or where the board is satisfied, upon the evidence heard by it, that the granting of the variance will alleviate a clearly demonstrable hardship approaching confiscation . . . .

As noted previously, CZO § 215(a) contains the 50 percent rule providing that "[n]o nonconforming sign shall be repaired at a cost in excess of fifty (50) percent of its original cost unless such sign is caused to comply with the provisions of this ordinance."  Section 215(a) also provides that "[n]otwithstanding the provisions of section 105(f) of this ordinance, no nonconforming sign shall be structurally altered, enlarged, moved or replaced . . . unless such sign is brought into compliance with the provisions of this ordinance."[1]

Section 215(b) grants the zoning administrator the discretion, with the concurrence of the director of planning, to

vary the requirements of this ordinance pertaining to the allowed number of signs, total sign area, individual sign area, number of freestanding signs and height of freestanding signs in cases in which the owner of a sign or other proper party desires to repair, replace, relocate or structurally alter an existing nonconforming sign . . . .

Adams says this "narrow authority to the Zoning Administrator is expanded to the outer limits of the ordinance by the next subsection, CZO § 215(c)," which states:

---

[1] Under CZO § 105(f), mentioned in the text, a nonconformity involuntarily damaged or destroyed may be reconstructed or restored within two years of being damaged or destroyed.

Nothing in this section shall be construed to limit or otherwise impair the right of any proper party to apply to the board of zoning appeals for a variance from any of the sign regulations set forth in this ordinance.

Sign regulations set forth in the ordinance include those contained in CZO § 214(a) which provides, inter alia, that no freestanding sign shall exceed 12 feet in height from ground level, and those contained in § 216(c) which provides, inter alia, that no billboard shall be located closer than 660 feet to the right-of-way line of any interstate highway or expressway.[2] It is undisputed that the billboards cannot conform to the height and setback requirements of CZO §§ 214(a) and 216(c).

In support of its contention that the BZA had the authority to grant a variance from the 50 percent rule, Adams makes an extensive argument that the rule is inextricably tied to the height and setback requirements of the CZO. The substance of the argument is contained in these passages from Adams' brief:

> Those signs which cannot be caused to comply with [the height and setback] requirements by relocation or otherwise are limited in the cost of repairs. To grant a variance to the cost of repairs limitation is identical to granting a variance to the requirements of complying with the size and setback restrictions . . . . A sign which does not have to comply with the 50% Rule is one that can be made to comply with the height and setback requirements. A variance to that requirement is one that says the sign may be repaired in excess of 50% of original cost even though it continues to violate one or more of the height and setback rules. One cannot be separated from the other.

---

[2] It was stipulated that "[t]he Shore Drive Billboards face and are located within 660 feet of the nearest edge of a right-of-way which is part of the National Highway System."

7

Hence, contrary to the Circuit Court's conclusion, CZO § 215[, which contains the 50 percent rule,] is a provision "regulating . . . the size, area, bulk or location of a building or structure when the strict application would result in unnecessary hardship to the property owner."

However, in holding that the BZA did not have the authority to grant a variance from the 50 percent rule, the trial court stated as follows:

> [V]ariances exist to provide relief when the condition of the land makes the application of regulations dealing with size, area, bulk or location of a structure [result in unreasonable or unnecessary hardship to the property owner]. The regulation which Adams Outdoor violated and from which it seeks relief does not relate to the bulk, size, area or location of the structure. The ordinance [provision] Adams Outdoor offended and for which it seeks relief deals only with the costs expended on repairs of non-conforming structures.

We agree with the trial court that Adams' request for relief "deals only with the costs expended on repairs of non-conforming structures" and not with the size, area, bulk, or location of the structures. Indeed, that is precisely the nature of the relief Adams' counsel told the BZA his client was seeking. At the BZA hearing on Adams' appeal from the zoning administrator's determination that the City Council was the appropriate body to consider whether Adams' billboards should remain, Adams' counsel stated:

> [T]he only issue is whether Adams spent too much on the sign and whether, because of the misunderstanding between the City and Adams [on] what could be done and what could not be done and whether it would in fact be proper for a variance. That's all that's before you.

8

Adams thus limited the scope of the BZA proceeding, and our review will be similarly limited.  See Foster v. Geller, 248 Va. 563, 567, 449 S.E.2d 802, 805 (1994) (review of the decision of a BZA on petition for writ of certiorari limited to scope of the BZA proceeding and reviewing court may only consider correctness of the BZA's decision).

We also agree with the trial court that variances exist to relieve property owners from unnecessary or unreasonable hardship resulting from strict application of zoning provisions. However, such relief is limited by Va. Code §§ 15.2-2201 and -2309 to the granting of variances from "those provisions regulating the size or area of a lot or parcel of land, or the size, area, bulk or location of a building or structure."  Both of these Code sections are completely silent on the subject of the cost of repairing nonconforming structures.  Clearly, therefore, state law does not confer upon BZAs the power to grant a variance from ordinance provisions limiting the cost to repair nonconforming structures.

But, Adams argues, CZO § 215(c) is sufficient alone to confer upon the BZA the power to "grant a variance from any provisions in the sign ordinance."  Adams recites § 215(c) as providing that "[n]othing in this section shall be construed to limit or otherwise impair the right of any proper party to apply

to the board of zoning appeals for a variance from any of the sign regulations set forth in this ordinance."  Adams says that § 215(c) gave it the right to apply for a variance from the 50 percent rule.

The trial court ruled that § 215(c) "is not a remedy provision," that it "simply states the ordinance does not limit any right to relief which a party may already have."  We think this ruling was correct.  Furthermore, the court's ruling avoids an interpretation of § 215(c) that would conflict with Va. Code §§ 15.2-2201 and -2309.  If, as has been noted, Adams does not have a right to relief under those sections of the Virginia Code, CZO § 215(c) could not legally be interpreted to provide the right.  The BZA " 'is a creature of statute possessing only those powers expressly conferred upon it,' " Board of Zoning Appeals v. University Square Assoc., 246 Va. 290, 294, 435 S.E.2d 385, 388 (1993) (quoting Lake George Corp. v. Standing, 211 Va. 733, 735, 180 S.E.2d 522, 523 (1971)), and the City may not expand the BZA's powers beyond those expressly conferred by the General Assembly.

Adams next contends that the trial court "erred in affirming the BZA's determination that the Zoning Administrator's Order of removal without compensation was proper."  This contention mischaracterizes both the BZA's and the trial court's action with respect to the issue of

10

compensation. The BZA made no determination concerning compensation at the hearing of May 6, 1998, at which the BZA considered the zoning administrator's order of removal. Indeed, the subject of compensation was not even mentioned in the hearing or in the motion the BZA adopted to uphold the determination of the zoning administrator.

Nor did the trial court affirm any BZA determination concerning compensation. In a letter opinion, the trial judge stated:

> The Court will not determine the issue of whether Adams Outdoor Advertising is entitled to just compensation for the removal of the sign[s]. The writs of certiorari were granted to review the decisions of the BZA. The review of BZA decisions is limited to the correctness of the BZA decision. See Foster v. Geller, 248 Va. 563, 567, 449 S.E.2d 802[, 805] (1994). The decision concerning whether Adams Outdoor Advertising is entitled to just compensation is outside the authority vested in the BZA. Accordingly, the issue is not properly before the court at this time.

The final order entered in the case states that "[t]he Court declines to decide the issue of entitlement to just compensation as that question is not properly before the Court."

We agree with the trial court. As noted previously, Va. Code § 15.2-2309 prescribes the powers and duties of boards of zoning appeals. The subject of entitlement to compensation for the alleged taking of or damage to property as a result of zoning actions is not among the powers enumerated. Furthermore, as Foster v. Geller teaches: "The review of a decision of a BZA

11

on a petition for writ of certiorari is limited to the scope of the BZA proceeding.  The reviewing court may only consider the correctness of the BZA's decision."  Id. at 567, 449 S.E.2d at 805.

Finding no error in the judgment of the trial court, we will affirm the judgment.

Affirmed.