# CIRCUIT COURT OF THE CITY OF NORFOLK

Shurl R. Montgomery

v.

Zoning Appeals Board
of the City of Norfolk
and Fred W. Kroll

February 9, 1998

Case No. (Chancery) CH97-878

BY JUDGE LYDIA CALVERT TAYLOR

This case was before the court on January 29, 1998, for arguments on an appeal of a ruling of the Board of Zoning Appeals of the City of Norfolk (hereafter "BZA" or "Board"). By agreement of counsel, with the concurrence of the court, no further evidence was taken, and the matter was to be decided on the record. The parties having submitted briefs earlier to the court, after argument was held, an order was entered, reflecting the court's ruling in favor of the respondents in the case, the BZA and the landowner, Fred W. Kroll. In ruling for respondents, the court upheld the BZA's reversal of a decision of a zoning administrator; the BZA had found that the landowner, who was grandfathered for the nonconforming use of his property as a duplex, had not discontinued that nonconforming use and thus had not lost its grandfathered status. This letter opinion will serve to record the rationale behind that decision.

Judicial review of a decision by the BZA is governed by clear legal principles. "The BZA's decision is presumed to be correct and can be reversed or modified only if the trial court determines that the BZA applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinance." *Foster v. Geller*, 248 Va. 563, 566 (1994) (decided under prior law) (citations omitted). "[J]udicial interference is permissible only if the Board's action is arbitrary and capricious, constituting a clear abuse of its discretion." *National Mem. Park v. Board of Zoning Appeals*, 232 Va. 89, 92 (1986) (decided under prior law) (citations omitted). "The person challenging the BZA's decision has the burden of proof on these issues." *Foster*, 248 Va. at 566 (citation omitted). "The review of a decision of a BZA on a petition for writ of certiorari is limited to the scope of the BZA proceeding."*Id.* at 567.

A stipulation of facts in this case was agreed upon for the court's use at trial. The building at issue in this case is located at 627 West 34th Street in Norfolk, Virginia, and currently is owned by respondent Kroll; it has been configured and operated as a duplex since at least 1948. The building has separate entrances for its two halves, with separate utilities and meters, and no shared internal living space. On June 26, 1989, the Norfolk Redevelopment and Housing Authority (hereafter "NRHA") made a rehabilitation loan to Alexander & Jones for rehabilitation of the property as it existed, that is, as duplex units, pursuant to building permits issued March 7, 1989. The loan went into default, and on August 31, 1994, the NRHA foreclosed on the property; at that time, one unit had become vacant. The petitioner's claim that the landowner "discontinued" its use as a duplex for two years and thus lost such nonconforming use dates the beginning of the alleged discontinuance from that point, August 31, 1994.

On January 22, 1995, the remaining tenant vacated his unit. On July 26, 1995, the NRHA advertised the property for sale as a duplex. Kroll, as a potential purchaser, told the NRHA that he had met with City of Norfolk planners; he had been informed that he could repair the property as a duplex as it was but could not increase the living space. Kroll thereafter purchased the property as a nonconforming duplex on July 16, 1996, and received a rehabilitation loan from the NRHA on August 2, 1996, to renovate the property as a duplex. At some point after that, the adjacent landowner called to complain to the city zoning inspectors that he believed that the duplex's use as such had been discontinued for two years and thus its right to a nonconforming use had been lost. In response, the zoning administrator denied Kroll a building permit to renovate the property as a duplex, on

October 15, 1996, on the grounds that the property had lost its nonconformity exemption from the zoning ordinances because one of the units in the duplex had been vacant for more than two years.

Kroll and the NRHA filed a joint appeal to the BZA from that administrative zoning decision on February 19, 1997.[1] Two hearings were held. At the first hearing, the BZA heard evidence from both sides and the legal position of the NRHA as to the proper interpretation of the zoning law. At the second, the BZA in addition heard advice it had sought from the City Attorney's Office. After hearing legal arguments for both sides and discussing the issues at length, the BZA voted, on April 17, 1997, to overturn the zoning administrator's decision. A petition for writ of certiorari from the BZA's ruling was filed with this court on May 16, 1997.

The general preference in zoning law is for strict construction of statutes which might involve a taking of private property. Balanced against the municipality's desire to achieve an overall harmonious plan of development, without nonconforming uses, is the need to scrutinize carefully any taking of property; such a taking is inherent in removing an existing (grandfathered) right to use one's property for a purpose that was permissible in that district before a zoning change took that right away prospectively, but allowed those then-existing buildings and uses to be continued. These two principles, which courts must harmonize in interpreting laws extinguishing grandfathered rights to nonconforming building or uses, protect conflicting interests. One leading expert on zoning laws describes the tension between the two guides to interpreting such zoning laws as follows:

> It has been stated generally that, where legislative enactments interfere with private property rights or are in derogation of rights of individual ownership, such enactments are most often subject to a strict construction. In addition, it is a well-established general rule that legislative measures in derogation of the common law are to be strictly construed … . [I]t has sometimes been indicated, as a general proposition, that zoning measures, being in derogation of the common law and of rights usually inhering in the ownership of property, should

---

[1] The application to the BZA filed by the attorney for the NRHA on behalf of the NRHA and Kroll at first cited that it was appealing a decision by a zoning administrator and seeking a variance, but the latter was acknowledged as a misnomer or mistake at the second hearing and accordingly marked "abandoned" on the application itself. Both sides agree that the NRHA and Kroll were not, in fact, seeking a variance, but rather were appealing a decision by the zoning administrator.

be strictly construed, and, more specifically, that provisions of zoning measures allowing the continuance or resumption of nonconforming uses are to be constructed strictly against such continuance or resumption.

Douglas Hale Gross, Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Involuntary Break in the Continuity of Nonconforming Use Caused by Difficulties Unrelated to Governmental Activity*, 56 A.L.R. 3d 14, 51-52 (1974) (footnotes omitted) (hereafter "Zoning I"). "[Z]oning measures should be strictly construed both with regard to provisions in derogation of common-law rights of property owners and with regard to provisions tending to allow the continuance of nonconforming user. The first position would appear to generally aid those holding a right to exercise a nonconforming use while the second would appear to generally favor the zoning authorities." Douglas Hale Gross, Annotation, *Zoning: Right to Resume Nonconforming Use of Premises After Involuntary Break in the Continuity of Nonconforming Use Caused by Governmental Activity*, 56 A.L.R. 3d 138, 168 (1974) (footnote omitted). In a similar vein, the Norfolk City Code succinctly states the dual, sometimes conflicting purposes: "It is the intent of this chapter *to permit* such nonconformities to continue until they are removed *but not to encourage* their continuation over time." Norfolk City Code, Appendix A: Zoning Ordinance, § 12-1 (emphasis supplied).

Norfolk's Zoning Ordinance § 12-9 sets out a limitation on the time during which nonconformities may be discontinued without losing the grandfathered right to use the property in such a now nonconforming (although once conforming) use: "If a nonconforming use is discontinued for a period of two years, then that use shall not be renewed or reestablished and any subsequent use of the lot or structure shall conform to the use regulations of the Zoning District in which it is located." This provision was relied on by the zoning administrator to prohibit Kroll from rehabilitating and operating his building as a duplex. The administrator defined "use" as a duplex to mean the situation in which two tenants simultaneously live in a duplex, each separately occupying one-half of the building. Any period during which one half of the duplex was unoccupied would constitute a cessation or discontinuance of use as a duplex, he opined; therefore, if that situation continued uninterrupted for two years, the right to nonconforming use would be lost. Because only one tenant had lived in the house at any one time since at least August 31, 1994, when the NRHA foreclosed on the property, the administrator found that the property had lost its nonconforming use exemption as of August 31, 1996, two years following that event.

The BZA determined, after two hearings, careful consideration of conflicting legal interpretations, and much discussion, that the zoning

administrator had acted improperly in his interpretation of the facts and the law. The BZA based its decision on its reading of discontinuance as requiring a look at the totality of the circumstances of use as a duplex, including the *intent* of the landowner to use the property as a duplex, as well as overt acts in furtherance of that intent, not simply focused on the single fact of whether the property was occupied by one or two tenants during the time frame. This reading by the BZA was supported by the wording of Norfolk's Zoning Ordinance § 1-4.8, which states, "The words 'used or occupied' include the words 'intended, designed or arranged to be used or occupied'." Here, there was no question that the building not only was designed to be used as a duplex – the administrator agreed that it continued to constitute a permissible, grandfathered nonconforming building in the district – but was arranged to be used, and in fact one half of it *was* used, as a duplex, which was the clear intent of the NRHA and Kroll, as manifest in all their acts during the two-year period.

The BZA's acceptance of respondents' argument that "discontinued" in § 12-9 of Norfolk's Zoning Ordinance takes its meaning from the definition of "discontinuance" in *Black's Law Dictionary* is a reasonable and logical reading of the ordinance and should be upheld by this court. *Black's* defines discontinuance as "synonymous with abandonment," when used in zoning ordinances. *Black's Law Dictionary* 551 (4th ed. rev. 1968). *Accord, Zoning I*, 56 A.L.R. 3d at 32 ("The prevailing view is ... that the word 'discontinuance' is equivalent, when used in a zoning ordinance with reference to nonconforming use, to 'abandonment' ... . [T]he courts have construed the word 'discontinuance' to mean, to be synonymous with, or to be equivalent to 'abandonment'.") (footnote omitted). "Discontinuance" or abandonment as used in zoning laws is construed to contain an element of intent, plus overt acts indicative of abandonment. *Boles v. City of Chattanooga*, 892 S.W.2d 416 (Tenn. App.), *app. denied*, 1994 Tenn. LEXIS 308 (1994); *accord, Coventry v. Glickman*, 429 A.2d 440 (R.I. 1981). Neither the NRHA nor Kroll ever indicated, by any of their actions, a desire to abandon use of the property as a duplex; on the contrary, it was stipulated that they advertised, sold, purchased, and attempted to renovate the property as a duplex, which was, in addition, how the city continued to tax the property during that two-year period.

Judge John W. Winston,[2] in a 1984 decision, referring to the statutes then in place, stated that "no existing vested right to use property may be impaired by rezoning. Further, such non-conforming prior use may continue until it is

---

[2] Now a retired judge of this court, Judge Winston was widely acknowledged to be a leading area expert on municipal law, zoning law in particular, throughout his time on the bench.

discontinued *by the land holder.*" *Turock Estate, Inc. v. Thomas,* 7 Va. Cir. 222, 224 (1984) (emphasis supplied). Judge Winston's statement conforms to the majority of court opinions by implying a requirement of some action on the part of the landowner, as opposed to passive inaction – failing to find a second tenant for the property, despite efforts to do so – before a nonconformity exemption is lost. The overwhelming majority of analogous state cases follow this reasoning. Although this court is not bound to follow other states' courts, this court finds it persuasive that the vast majority of states which have addressed this issue have found that some *action* is required on the part of the landowner before a nonconformity exemption is lost, as opposed to mere lack of occupancy by two tenants simultaneously. *See Zoning I,* 56 A.L.R. 3d at 35-42 (finding that action is required for abandonment in most states which have considered the issue).

Cases dealing with the right to resume a nonconforming use after business, structural problems, or other external difficulties cause an involuntary break in the continuity of nonconforming use often state "in effect, that a mere factual cessation of use, without more (that is, absent an intent to abandon), will not constitute a legal abandonment [discontinuance] of the nonconforming use." *Zoning I,* 56 A.L.R. 3d at 35 (footnote omitted). *See, e.g., People ex rel. Trebat v. Park Ridge,* 249 N.E.2d 681 (Ill. 1969) (requiring more than mere cessation of use); *Dobbs v. Board of Appeals,* 162 N.E.2d 32 (Mass. 1959) (finding nonoccupancy of premises is not of itself a discontinuance); *Campbell v. Board of Adjustment,* 191 A. 742 (N.J. 1937) (finding the temporary inability to carry on a nonconforming use does not cause a loss of the right to exercise it); *Haulenbeek v. Allenhurst,* 57 A.2d 52 (N.J. 1948) (finding interruption for lack of demand, inability to get a tenant, and financial difficulty do not result in abandonment); *Highland Park v. Marshall,* 235 S.W.2d 658 (Tex. Civ. App. 1950) (finding lack of demand, inability to get a tenant, or financial difficulties leaving a property vacant do not result in abandonment); *State ex rel. Schaetz v. Manders,* 238 N.W. 835 (Wis. 1931) (stating discontinuance cannot mean a temporary nonoccupancy of a building). *Accord, Ullman ex rel. Eramo v. Payne,* 16 A.2d 286 (Conn. 1940) (stating discontinuance does not mean mere temporary suspension for a reasonable time); *Darien v. Webb,* 162 A. 690 (Conn. 1932) (stating in dictum that a temporary nonoccupancy of the premises would not work a termination); *McCoy v. Knoxville,* 190 N.E.2d 622 (Ill. App. 1960) (looking to the efforts of the owner to rent or sell the property for a nonconforming use to find no intent to abandon); *Bowling Green v. Miller,* 335 S.W.2d 893 (Ky. 1960) (finding discontinued, in legal sense, means more than mere suspension of a nonconforming use).

In most states, the duration or length of time that the conforming use has existed may be a factor for consideration. *See Zoning I*, 56 A.L.R. 3d at 35-42. Here, continuous operation as a duplex dates back at least fifty years. Alexander & Jones, the NRHA, and Kroll took no action to end that state of occupancy as a duplex and/or to leave the duplex vacant; in fact, each owner attempted to rent it as a duplex throughout each's ownership. When there were tenants in the house, the living space was always configured and occupied so as to continue the nonconforming use, that is, as a duplex; no tenant ever occupied any space but one-half of the duplex, in complete conformity with its design and use as a duplex.

Given the above facts, and the stringent standard to which courts are held in deciding BZA appeals, this court finds no reason to overturn the BZA's decision, seeing no error in the BZA's reasoning or result that would merit overturning their carefully considered decision. The order in this case having already been submitted, signed by all parties, and filed with the court, this matter is dismissed from the court's active docket.