Present:  All the Justices

BOARD OF ZONING APPEALS OF
THE CITY OF NORFOLK

v.  Record No. 971655     OPINION BY JUSTICE ELIZABETH B. LACY
                                   April 17, 1998
MEHRI KAHHAL, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John C. Morrison, Jr., Judge

In this appeal, we consider whether the circuit court erred in reversing the decision of a board of zoning appeals because the board applied erroneous principles of law.

Mehri Kahhal and Mahmoudi Zarandi (collectively, the owners) purchased property located at 4000 Parker Avenue in the City of Norfolk, in 1990.  The property was zoned for commercial use.  The owners leased the property to Frederick Holloway, who held a business license from the City to operate "D&H Grocery."  In 1992, the City rezoned the property for residential use.  However, the zoning ordinance allowed nonconforming uses to continue subject to § 12-9 of the ordinance.  That section provides:

> If a nonconforming use is discontinued for a period of two years, then that use shall not be renewed or reestablished and any subsequent use of the lot or structure shall conform to the use regulations of the Zoning District in which it is located.

In 1994, following a fire in the store, Holloway abandoned his lease.  He surrendered his business license on

June 16, 1994.  The owners decided to operate the grocery store themselves and secured a loan to finance the necessary repairs to the property.  On October 9, 1995, the City issued the owners a business license to operate a grocery store on the property.  That same day, the owners also paid a meal tax cash bond to the City in the amount of $300.  A second business license was later issued with an expiration date of December 31, 1996.

On February 9, 1996, the owners obtained a building permit from the City to repair the property, and the City subsequently issued permits for electrical and plumbing work.  City inspectors approved the repair work on a number of occasions from June through August of 1996.  On August 21, 1996, the owners received a Notice of Zoning Violation from the zoning inspector informing them that the property could not be used as a grocery store because it had lost its nonconforming use status.

The owners appealed to the Board of Zoning Appeals (the Board).  At the public hearing, the zoning administrator testified that the property had lost its nonconforming use status on June 16, 1996, pursuant to § 12-9 of the zoning ordinance, because it had not been operated as a grocery store for a period of two years.  The administrator measured the two-year period from the date the owners' lessee had

surrendered his business license. The administrator also testified that, at the time the building permit was issued, the owners were told that the business had to be in operation by June 16, 1996.

The owners presented evidence of the repair and renovation work they had done on the property, as well as the business licenses, building permits, and inspection approvals they had received from the City. They denied they were told that they had to be operating the business by June 16. A number of neighborhood representatives testified both for and against the owners. One resident of the neighborhood, Mr. Isaiah Rogers, testified that the property had not been used as a grocery store since "about '88, something like that."

The Board upheld the zoning administrator's decision. The owners filed a petition for a writ of certiorari with the circuit court arguing that the Board applied erroneous principles of law in making its decision. The circuit court did not take additional evidence, but relied on the record of the hearing before the Board and argument of counsel.

The owners argued, as they had before the Board, that continuation of the nonconforming use under § 12-9 is not limited to the actual operation of the "use," but includes preparatory actions such as securing financing to repair the property, paying the meal tax bond, and getting business

3

licenses as well as building permits.  They asserted that, even though § 12-9 is silent as to its scope, other sections of the zoning ordinance support their interpretation of § 12-9.

The owners pointed to § 12-8 of the ordinance, which allows restoration or reconstruction of a nonconforming use in the event of a fire as long as the owners diligently prosecute the repairs to completion.  This provision, they argued, not only is applicable to their specific situation because of the 1994 fire, but it also shows that actual operation is not a prerequisite for avoiding a determination that a nonconforming use has been discontinued.  Similarly, the owners suggested that the definition of "used or occupied" as "intended, designed or arranged to be used or occupied" in § 1-4.8 of the ordinance is consistent with their interpretation of § 12-9. This definition is relevant, the owners argued, because § 1-4 of the zoning ordinance, which includes § 1-4.8, states that "[t]he regulations contained in this ordinance shall be interpreted and applied in accordance with the general rules set out in this section."  Finally, the owners claimed that the Black's Law Dictionary definition of "discontinuance" — an ending, causing to cease, ceasing to use, giving up -- supports their position that a nonconforming use is not abandoned or discontinued as long as affirmative actions are

4

ongoing to recommence the operation.  Black's Law Dictionary 464 (6th ed. 1990).

The circuit court agreed with the owners and concluded that, under § 12-9, neither continuation nor abandonment of a nonconforming use is contingent upon actual operation of the use.  Because the Board's decision was premised on the principle that a nonconforming use is "discontinued" on the date the use ceases to be in actual operation, the circuit court concluded that the Board applied an erroneous legal principle.  Applying what it considered the correct principle, the circuit court held that the activities of the owners at the time the City issued the building permit did not constitute "discontinuation" of the nonconforming use.  Therefore, the circuit court concluded that the property retained its nonconforming use status because the use had not been discontinued for a period of two years, and entered an order reversing the decision of the Board.

In this appeal, the Board seeks reversal of the circuit court's judgment and reinstatement of its decision, asserting that the circuit court erred in ignoring the testimony of the neighborhood resident who said there was no grocery store in operation since "about '88;" in improperly relying on the issuance of the building permit because the permit was improvidently or erroneously granted; and by relying on § 1-

5

4.8 of the zoning ordinance because that section was not "argued before the Board" and is "irrelevant to the issues in this case." Finally, the Board asserts that its decision should be reinstated because the circuit court erred in failing to accord the decision of the Board a presumption of correctness. None of these challenges is well taken.

First, the Board's decision was based on the initial presumption that the nonconforming use was operational until just prior to June 16, 1994, the date the owners' lessee surrendered his business license. By adopting this position, the Board implicitly rejected the testimony that the grocery store was not operational since sometime around 1988. The circuit court was not required to afford such testimony more weight than that given it by the Board.

Next, whether the building permit was improvidently or illegally granted in February 1996 because the use was discontinued at an earlier date, as now asserted by the Board, is not determinative. The issue before the Board and the circuit court was whether the owners' actions constituted discontinuation of the nonconforming use under § 12-9 of the zoning ordinance. That same issue would have arisen if the City had denied the building permit on the basis that the nonconforming use had been discontinued. The owners were already engaged in activities directed to reopening the

6

grocery store, such as obtaining financing, securing business licenses, and paying the meal tax bond.  Thus, had the building permit been denied, the same legal question could have been raised.

We also reject the Board's contention that the circuit court erred in considering other sections of the zoning ordinance, specifically the definition of "used or occupied" in § 1-4.8.  The circuit court did not apply this definition to § 12-9.  Rather it looked to this section and others in the ordinance to determine the purpose and intent of the zoning ordinance, specifically § 12-9.  This reference to other provisions in pari materia with the section at issue is an accepted method of statutory construction and did not constitute error by the circuit court.  See Prillaman v. Commonwealth, 199 Va. 401, 405-06, 100 S.E.2d 4, 7-8 (1957).

Finally, we reject the Board's assertion that the circuit court erred by failing to extend the presumption of correctness to the Board's decision.  It is well established that the decision of a board of zoning appeals is presumed to be correct and will be reversed or modified only if the board applied erroneous principles of law or was plainly wrong and in violation of the purpose and intent of the zoning ordinance.  Foster v. Geller, 248 Va. 563, 566, 449 S.E.2d 802, 804-05 (1994).  Furthermore, great weight must be given

7

to the consistent construction of an ordinance by the official charged with enforcing the ordinance.  Cook v. Board of Zoning Appeals of the City of Falls Church, 244 Va. 107, 111, 418 S.E.2d 879, 881 (1992).

In support of its position, the Board only points again to those actions of the circuit court to which it assigned error:  ignoring the testimony of the neighborhood resident, relying on the issuance of the building permit, and referring to other sections of the zoning ordinance in interpreting § 12-9.  We have already held that the circuit court did not err in any of these particulars and we find nothing else in the record to suggest that, in reaching its decision, the circuit court ignored any of the principles which govern its review of the Board's decision in this case.[*]

Accordingly, for the reasons stated, we will affirm the decision of the circuit court.

Affirmed.

---

[*] We are not called upon to consider whether the circuit court's interpretation of § 12-9 is correct because the validity of that interpretation was not the subject of an assignment of error.