COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Alexandria, Virginia


LARS JAMES HANSON
                                            OPINION BY
v.    Record No. 1311-97-4         JUDGE ROSEMARIE ANNUNZIATA
                                         JANUARY 26, 1999
COMMONWEALTH OF VIRGINIA



            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Jack B. Stevens, Judge

         Peter D. Greenspun (Cynthia A. Bailey;
         Peter D. Greenspun & Associates, P.C., on
         briefs), for appellant.

         Ruth Morken McKeaney, Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellee.



     Lars James Hanson ("appellant") was convicted by jury trial

in the Circuit Court of Fairfax County of first degree murder.

Appellant contends the trial court erred:  (1) by failing to

grant a mistrial after the Commonwealth asked him questions on

cross-examination about statements he made regarding an unrelated

offense without previously having disclosed those statements

pursuant to a discovery order entered under Rule 3A:11; (2) by

failing to grant a mistrial or to strike the Commonwealth's

questions about his statements based on their irrelevance to any

issue presented at trial; and (3) by failing to advise the jury

during its sentencing deliberations that he would be ineligible

for parole.  For the reasons that follow, we affirm.

I.

BACKGROUND

On the evening of March 25, 1996, appellant and his girlfriend, Virginia Price, drove into a Shell station to purchase gasoline. As appellant pumped gas, William Henry Gaumer and David Stallard drove up in Gaumer's van to a nearby pump. According to appellant, Stallard made several unwelcome comments to Price as he walked by her on his way to and from the station. Ignoring Stallard's comments, appellant finished pumping gas and walked to the cashier booth to pay. As appellant returned and got in his vehicle to leave, he saw Stallard make a sexual gesture toward Price. In response, appellant took a large hunting knife out of his vehicle, went over to Stallard, and fatally stabbed Stallard as he sat in the front passenger seat of Gaumer's van with the window down.

Before trial, appellant gave notice on August 27, 1996 of "his intent to present evidence on the issue of his sanity at the time of the crime charged." On January 23, 1997, pursuant to Rule 3A:11, the court entered a discovery and inspection order. The order required the Commonwealth to permit appellant:

> to inspect, copy and/or photograph (1) all written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the Attorney for the Commonwealth . . . .

At trial, appellant's counsel presented evidence to

establish that appellant suffers from a mental condition known as Intermittent Explosive Disorder and that he acted under the irresistible impulse of this condition when he stabbed Stallard to death.  To this end, appellant testified broadly on direct examination about his past, including information regarding his upbringing, prior convictions, and experiences within the penal system.  One such experience occurred in 1990 in Ocean City, Maryland, and resulted in appellant's conviction for attempted murder.  Appellant testified with respect to that incident, stating he became involved in an altercation with three men after coming to the aid of a friend.  Realizing that he was outnumbered and surrounded by these men, appellant pulled out a gun "hoping that they would stop" advancing on him.  Appellant further testified:

Q.  Did they [stop]?

A.  They didn't stop.  Then the next thing you know, the trigger was pulled.

Q.  You pulled it?

A.  I pulled the trigger.  The guy who was right in front of me he was the one who was shot, and we were just standing there looking at each other and then I kept hearing my name, "Lars, Lars, Lars," which was I think either Rick or Isaac who was with me, and then I just -- I snapped out of it, and just they said, "Come on.  Come on," and we were leaving.

On cross-examination, the Commonwealth asked appellant whether he felt sorry for shooting the man in Maryland. Appellant replied, "Yes."  Appellant subsequently objected to

this inquiry on the ground of relevance; his objection was overruled. The Commonwealth then questioned appellant regarding statements he made to Maryland police officers after the shooting. Specifically, the Commonwealth asked whether appellant recalled saying he "did not feel bad about shooting [his] victim," that he "wished the exit wound could be even bigger," and that he wished he had his nine millimeter so his target "would have dropped to the ground." Appellant denied making all such statements.

Notwithstanding the trial court's discovery and inspection order, the Commonwealth had not disclosed these statements before appellant's trial. Appellant immediately objected to the statements' relevance. Following appellant's testimony, appellant also moved for a mistrial, arguing the statements were irrelevant and the Commonwealth should have disclosed them pursuant to the court's discovery order. The court overruled appellant's objection and denied his motion for a mistrial, stating that the discovery order's scope was limited to the offense presently on trial.

The jury found appellant guilty of first degree murder and subsequently, during sentencing deliberations, sent a note to the court asking the following question: "what is the minimum amount of time someone would have to serve if he was sentenced to 20 years, 30 years, [and] 40 years?" In response, the court advised the jury that it "need not concern itself with the answer to this

question."  Outside the presence of the jurors, appellant's counsel noted that the question was "directed toward the issue of parole" and argued that it should be answered.  The court disagreed, noting appellant's objection.

## II.

### STATEMENTS SUBJECT TO THE DISCOVERY ORDER

Appellant first argues the trial court committed reversible error by failing to grant a mistrial based on the Commonwealth's cross-examination reference to his statements to Maryland authorities, which had not been disclosed pursuant to the court's pretrial discovery order.  We disagree.

Rule 3A:11(b)(1) requires a circuit court trying a felony case, upon written motion, to order the Commonwealth to permit the defendant access to:

> any relevant (i) written or recorded statements or confessions made by the accused . . ., or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the attorney for the Commonwealth . . . .

As the text of the rule indicates, the Commonwealth's obligation to disclose both recorded and oral statements is subject to a relevancy condition.  Accordingly, we first decide whether appellant's oral statements to Maryland authorities regarding his involvement in a shooting approximately seven years before the discovery order at issue were "relevant" to the instant prosecution for murder, as the term is used in Rule 3A:11(b)(1).

There are no cases in Virginia directly addressing the issue of whether statements made to police during the investigation of an unrelated incident are "relevant" within the meaning of Rule 3A:11(b)(1). However, when construing the meaning of "relevant" under this rule, we take cognizance of our appellate court decisions which hold that there is no constitutional right to discovery in a criminal case and that the accused's statutory right to discovery is a limited one. Hackman v. Commonwealth, 220 Va. 710, 713, 261 S.E.2d 555, 558 (1980); Bellfield v. Commonwealth, 215 Va. 303, 306, 208 S.E.2d 771, 773-74 (1974); Guba v. Commonwealth, 9 Va. App. 114, 118, 383 S.E.2d 764, 767 (1989).

In addition, familiar rules of statutory construction are instructive and provide guidance in the interpretation of court-adopted rules. Green v. Lewis Truck Lines, Inc., 443 S.E.2d 906, 907 (S.C. 1994); Vaughn v. Chung, 830 P.2d 668, 672 (Wash. 1992). When interpreting a statute, we examine its provisions in their entirety, rather than by isolating particular words or phrases. Ragan v. Woodcroft, 255 Va. 322, 325, 497 S.E.2d 740, 742 (1998); Buonocore v. C&P Tel. Co., 254 Va. 469, 472-73, 492 S.E.2d 439, 441 (1997). When a statute's words are not sufficiently explicit, we may determine the intent of the legislature from a comparison of the statute's several parts in pari materia. Virginia Soc'y for Human Life, Inc. v. Caldwell, 256 Va. 151, 156, 500 S.E.2d 814, 816 (1998). In pari materia is

the rule of statutory construction that statutes or sections of the same statute relating to the same subject "'should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments.'" Alger v. Commonwealth, 19 Va. App. 252, 256, 450 S.E.2d 765, 767 (1994) (quoting Black's Law Dictionary 791 (6th ed. 1990)). See Board of Zoning Appeals of Norfolk v. Kahhal, 255 Va. 476, 480-81, 499 S.E.2d 519, 522 (1998) (finding that the trial court's reference to various sections of a zoning ordinance in pari materia in order to determine another section's purpose and intent did not constitute error). This rule "applies with peculiar force in the construction of a Code to the several parts thereof which relate to the same subject-matter, were conceived by the same minds, prepared by the same hands, and adopted at the same time by the same legislative body." South & W. Ry. Co. v. Commonwealth, 104 Va. 314, 321, 51 S.E. 824, 826 (1905).

Viewing Rule 3A:11 as a whole, the limitations dictated in related and contemporaneously enacted subparagraphs of the Rule support the conclusion that the term "relevant" as used in subparagraph (b)(1) does not generally encompass statements unrelated to the particular offense under prosecution. Rule 3A:11(b)(1)(ii) provides that an accused's discovery of "relevant" autopsy reports, various tests, and physical and mental examination reports is limited to those reports "made in connection with the particular case . . . ." (Emphasis added).

- 7 -

Similarly, when the accused has been granted discovery of "relevant" information under Rule 3A:11(b) and intends to rely on a defense of insanity, the Commonwealth's right to discover "any written reports of physical or mental examination of the accused" is limited to those made in connection with the particular case. Rule 3A:11(c)(3).

Guided, therefore, by the principles of construing related provisions of Rule 3A:11 in pari materia and the limiting construction Virginia law has placed on discovery in criminal cases, we find that appellant's statements to Maryland authorities were not "relevant" within the meaning of Rule 3A:11. While the scope of discovery may be enlarged, in appropriate circumstances, to encompass material which does not relate to the particular offense under prosecution, there is no basis upon which to conclude that the scope of permitted discovery was enlarged in this case.[1] Appellant's statements related to charges in another jurisdiction arising from an incident that occurred nearly seven years prior to the instant case. The statements, on their face, manifest no inherent nexus to the offense being prosecuted. Furthermore, we find nothing in the

---

[1] Although appellant contends the trial court's discovery order compelled the Commonwealth to provide his counsel with any and all statements he made to police irrespective of the time frame or the charges in relation to which they were made, we note that this order was entered pursuant to, and is limited in scope by, Rule 3A:11. As such, in the absence of anything in the record to clearly suggest otherwise, the court's order cannot be enlarged to encompass statements clearly outside the intended reach of Rule 3A:11.

record that suggests appellant intended to prove the existence of a mental disorder at any time other than the time-frame of the instant offense or that the Commonwealth was in any way put on notice that appellant's statements in an unrelated matter were or would become relevant to appellant's insanity defense or to any other issue raised in the prosecution of the instant offense. Neither appellant's notice of his intent to present evidence on the issue of sanity nor his motion for discovery and inspection reveals specifically what he expected to prove at trial. In fact, a fair reading of appellant's notice indicates that appellant only intended to present evidence regarding his sanity "at the time of the crime charged" and not evidence of other instances where appellant's alleged disorder manifested itself.[2]

In short, we find no basis on which the Commonwealth could have concluded that appellant's statements following the Maryland shooting would be relevant to the instant prosecution and subject to disclosure according to Rule 3A:11(b)(1) and the court's discovery and inspection order. The statements in question only became relevant after appellant's description of the Maryland shooting on direct examination, thereby "opening the door" to the Commonwealth's effort to impeach him on cross-examination. "Once a party has 'opened the door' to inquiry into a subject, the

---

[2] Appellant's notice simply reads, "Please take note that the defendant, by counsel, hereby gives notice of his intent to present evidence on the issue of his sanity at the time of the crime charged in the above matter."

permissible scope of examination on the subject by the opposing party is 'a matter for the exercise of discretion by the trial court' . . . ." Savino v. Commonwealth, 239 Va. 534, 545, 391 S.E.2d 276, 282 (quoting Bunch v. Commonwealth, 225 Va. 423, 438, 304 S.E.2d 271, 279-80, cert. denied, 464 U.S. 977 (1983)), cert. denied, 498 U.S. 881 (1990).[3]

Based on our finding that the statements were not discoverable under Rule 3A:11(b)(1) and that they became relevant only by virtue of appellant's direct testimony, we find no abuse of discretion by the trial court in permitting the reference to the statements in the Commonwealth's cross-examination of appellant and no error in the denial of appellant's motion for a mistrial.

III.

RELEVANCE OF COMMONWEALTH'S CROSS-EXAMINATION

We next address whether the court erred by failing to grant a mistrial or to strike the Commonwealth's questions concerning appellant's statements to Maryland authorities based on their

---

[3] Several United States Courts of Appeals have addressed whether statements introduced by the prosecution only for rebuttal and impeachment purposes are relevant in the context of discovery and within the meaning of Rule 16, a rule whose language at the time of these decisions was analogous to that of Rule 3A:11. These Courts held that such statements were not relevant. United States v. Gleason, 616 F.2d 2, 24-25 (2d Cir. 1979), cert. denied, 444 U.S. 1082 (1980); United States v. Hodges, 480 F.2d 229, 232-33 (10th Cir. 1973); United States v. Skillman, 442 F.2d 542, 550-51 (8th Cir.), cert. denied, 404 U.S. 833 (1971). Subsequent to these decisions, the scope of discoverable statements was broadened by amendment to Rule 16.

evidentiary irrelevance to any issue at trial. For the reasons set forth below, we find no error.

We initially note that appellant mischaracterizes the court's alleged error in permitting cross-examination based on his statements as one involving the improper admission of irrelevant evidence. It is clear, however, that neither the statements nor any other evidence tending to establish the existence of those statements were admitted at trial after appellant denied making the statements; the statements merely remained the subject of the Commonwealth's cross-examination of appellant.

Assuming, however, that appellant's claim of error concerns the relevance of the Commonwealth's line of inquiry into appellant's statements regarding the Maryland shooting, as noted earlier, we find that appellant opened the door to this inquiry on direct examination and cannot now be heard to complain. "'Subject to such reasonable limitations as the trial court may impose, a party has an absolute right to cross-examine his opponent's witness on a matter relevant to the case, which the opponent has put in issue by direct examination of the witness.'" Maynard v. Commonwealth, 11 Va. App. 437, 444, 399 S.E.2d 635, 639 (1990) (en banc) (quoting Basham v. Terry, 199 Va. 817, 824, 102 S.E.2d 285, 290 (1958)).

Appellant's testimony on direct examination regarding the Maryland shooting advanced his defense that he suffered from an

intermittent explosive disorder and that his actions in the instant case were the result of an irresistible impulse. Appellant described his actions in Maryland using such terms as, "the next thing you know, the trigger was pulled," and after he heard a friend calling his name, "I [then] snapped out of it." The Commonwealth's subsequent questions as to whether appellant stated to police that he felt "bad" about the shooting, wished the exit wound "had been even bigger," and wished his target "had dropped to the ground when shot" relate to elements of the irresistible impulse test, viz., whether "the accused is able to understand the nature and consequences of his act and knows it is wrong, but his mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." <u>Thompson v. Commonwealth</u>, 193 Va. 704, 718, 70 S.E.2d 284, 292 (1952). Thus, the Commonwealth's cross-examination regarding the statements was not improper because they were relevant to rebut appellant's testimony on direct examination.

We, therefore, find no merit to the appellant's claim of error based on the trial court's failure to strike the line of questioning and refusal to grant a mistrial.

IV.

DISCLOSURE OF PAROLE ELIGIBILITY TO JURY

Finally, appellant argues that the trial judge erred in refusing to inform the jury of his ineligibility for parole when the jury raised this issue in one of their questions during

sentencing deliberations.  It is well settled that a defendant's parole ineligibility is "traditionally not [a] factor[] that juries in Virginia have been permitted to consider in determining sentence."  Mosby v. Commonwealth, 24 Va. App. 284, 292, 482 S.E.2d 72, 75 (1997).  See Eaton v. Commonwealth, 240 Va. 236, 248, 397 S.E.2d 385, 392 (1990), cert. denied, 502 U.S. 824 (1991).  The General Assembly's abolition of parole for all persons convicted of felonies committed after January 1, 1995 does not affect this rule.  As we have noted in our prior decisions, this matter is best left to legislative determination, where the various policy considerations underlying the advisablity of informing juries of a defendant's parole ineligibility are more properly addressed.  Mosby, 24 Va. App. at 292, 482 S.E.2d at 75.

For the foregoing reasons, we affirm appellant's conviction.

Affirmed.