# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

John T. King,
Chesapeake City
Zoning Administrator

v.

Azalea Realty and
Development Corp.
and Lori Taylor

December 18, 2015

Case No. (Civil) CL15-1122

BY JUDGE TIMOTHY S. WRIGHT

This matter is before the Court on the zoning administrator's petition for writ of certiorari to the April 23, 2015, decision of the Board of Zoning Appeals of the City of Chesapeake (BZA). The BZA reversed the zoning administrator's December 4, 2014, determination that: (1) he had not been provided with enough information to make a decision regarding the lawful nonconforming use status of a towing service storage yard on a property located at 3332 Station House Road, Chesapeake, VA 23321; and (2) more than two years have elapsed from the expiration of any lawful nonconforming use status of the property.

*Standard of Review*

In hearing an appeal from a decision of the BZA:

> the findings and conclusions of the board of zoning appeals on questions of fact shall be presumed to be correct. The appealing party may rebut that presumption by proving by a preponderance of the evidence, including the record before the board of zoning appeals, that the board of zoning appeals erred in its decision. Any party may introduce evidence in the

proceedings in the court. The court shall hear any arguments on questions of law *de novo*.

Va. Code § 15.2-2314.

## *Analysis*

The 1969 Chesapeake Zoning Ordinance was the relevant operative law in 1977, when the respondent asserts that use of the subject property as a towing yard began. It is undisputed that, at that time, the property was zoned M-1 Industrial. The zoning administrator maintains, however, that a conditional use permit was required to operate the towing yard in 1977 because that use was classified under "Junkyards for automobiles and scrap materials subject to all city ordinances." The 1969 zoning ordinance further provides that a salvage yard is "[a]n area used for storage of waste paper, rags, scrap metal, or other junk, including storage of motor vehicles, and dismantling of vehicles, equipment, and machinery; junkyard."

The Court, however, notes that, under the 1969 ordinance, "Truck terminals, repair shops, hauling and storage yards" are permitted uses for M-1 Industrial. This definition is far more aligned with the actual use of the subject property, and the Court finds that it is applicable. Accordingly, no conditional use permit was required in 1977, and the Court, therefore, affirms the BZA's determination that the zoning administrator erred in finding that he did not have sufficient information to make a determination under Chesapeake Zoning Ordinance § 15-108(B).

Chesapeake Zoning Ordinance § 15-108(B) provides:

> *Proof of legal nonconformity.* The burden shall be upon the person claiming a lawful nonconformity to prove that the nonconforming use, building, structure, or lot was established in compliance with the law. The zoning administrator may require, among other things, the following forms of evidence:
>
> 1. An affidavit from the owner of the property involved, setting out when the use, building, or structure was first established and describing the nature and dimensions of the use, building, or structure at the time that such became nonconforming.
>
> 2. A copy of a building permit, license, or other similar document establishing that the use, building, or structure was commenced lawfully.
>
> 3. Corroboration from third parties.
>
> 4. A physical survey indicating the former building size and location on the site.

It is consequently necessary for the Court to address the remaining issue in this matter: whether the legal nonconforming use of the subject property as a towing yard has been discontinued for more than two years.

Chesapeake Zoning Ordinance § 15-107, in accordance with Va. Code § 15.2-2307, provides:

> If a lawful nonconforming use is discontinued for more than two (2) years, it shall be deemed to be abandoned. The land and building previously devoted to such nonconforming use shall automatically be required to comply with the then-existing provisions of this zoning ordinance for the zoning district in which such land and building are located.

The parties agree that the meaning of "discontinued" as employed in the statute is determinative of this issue.

The subject property has been used as a towing and recovery lot since 1977. Although the property has been without a tenant since September 30, 2012, Azalea has not ceased its attempts to lease the property as a towing and storage yard. Azalea, in fact, obtained a tenant in the spring of 2014, and the tenant's attempts to be listed as an approved towing service by the Chesapeake Police Department led to the discovery that there was no zoning permit for the property, and ultimately, this litigation.

This Court finds that the position of the circuit court in *Board of Zoning Appeals v. Kahhal*, 255 Va. 476 (1998), is well taken. The circuit court in that case considered an appeal by two Norfolk property owners whose property was not leased for several years due to a fire in subsequent renovations. *Id.* at 477–79.

The owners pointed to § 12-8 of the ordinance, which allows restoration or reconstruction of a nonconforming use in the event of a fire as long as the owners diligently prosecute the repairs to completion. This provision, they argued, not only is applicable to their specific situation because of the 1994 fire, but it also shows that actual operation is not a prerequisite for avoiding a determination that a nonconforming use has been discontinued. Similarly, the owners suggested that the definition of "used or occupied" as "intended, designed, or arranged to be used or occupied" in § 1-4.8 of the ordinance is consistent with their interpretation of § 12-9. This definition is relevant, the owners argued, because § 1-4 of the zoning ordinance, which includes § 1-4.8, states that "the regulations contained in this ordinance shall be interpreted and applied in accordance with the general rules set out in this section." Finally, the owners claimed that the *Black's Law Dictionary* definition of "discontinuance" — an ending, causing to cease, ceasing to use, giving up — supports their position that a nonconforming use is not abandoned or discontinued as long as affirmative actions are ongoing to recommence the operation. *Black's Law Dictionary*, 464 (6th ed. 1990). *Id.* at 479.

The circuit court held that, under the operative zoning ordinance, "neither continuation nor abandonment of a nonconforming use is contingent upon actual operation of the use." *Id.* at 479. The Supreme Court of Virginia affirmed the ruling of the court below, although it did not reach the abandonment question. *Id.* at 480 ("[T]he Board only points again to those actions of the circuit court to which it assigned error: ignoring the testimony of the neighborhood resident, relying on the issuance of the building permit, and referring to other sections of the zoning ordinance in interpreting § 12-9. . . . [T]he circuit court did not err in any of these particulars, and we find nothing else in the record to suggest that . . . the circuit court ignored any of the principles which govern its review of the Board's decision in this case. We are not called upon to consider whether the circuit court's interpretation of § 12-9 is correct because the validity of that interpretation was not the subject of an assignment of error.").

This Court holds that " 'discontinuance' or abandonment as used in zoning laws is construed to contain an element of intent, plus overt acts indicative of abandonment." *Montgomery v. Zoning Appeals Bd.*, 45 Va. Cir. 126, 130 (Norfolk City 1998) (holding that legal nonconforming use was not discontinued where landowner evidenced no intent to cease use of the property as a duplex; whenever tenants occupied the building, they only occupied one half, consistent with the landowner's intended use).

Applying this definition to the Chesapeake Zoning Ordinance and the facts of the case at bar, the Court finds that Azalea Realty did not abandon or discontinue the use of the subject property as a towing and recovery lot.

The decision of the BZA is hereby affirmed.